OPINION
This case is before us on Anthony Canfarelli's appeal of spousal support obligations entered in a divorce action. In the final judgment and decree of divorce, the trial court ordered Anthony to pay his ex-wife, Sherry, $750 per month in spousal support for an indefinite period of time. Anthony contests this order on the following grounds:
 I. The trial court erred in failing to set forth a date for the termination of Appellant's spousal support obligation, and
 II. The trial court erred in awarding Appellee sustenance support in the amount of $750 per month for an indefinite period of time.
After reviewing the record and applicable law, we find that the trial court abused its discretion by failing to set a date certain for the end of spousal support. However, we find no error in the amount of support awarded. Therefore, this case is reversed in part and is remanded to the trial court for a decision on a definite date when spousal support should end.
 I
According to the record, the parties had been married for fourteen years at the time of their separation in November, 1998. Anthony was employed at Emery Worldwide, and earned about $57,920 per year. Sherry earned about $14,500 yearly, doing various clerical and cooking duties for a church. However, Sherry was fired from her job in February, 1999. At the time of the divorce hearing, Sherry was unemployed, but was a full-time student at Sinclair Community College. She indicated that she intended to earn an associate's degree in architectural drawing, and estimated that her income after graduation would be between $12 and $15 per hour.
At the hearing, Sherry gave an additional reason for being unemployed. Specifically, she explained that the parties' two younger children had been sexually abused by their older brother and she could not leave them alone with him. Her only income was temporary child and spousal support. Because of limited income, she lived in rental housing, where the rent was based on income. She also received food stamps. However, at the time of the hearing, she was being evicted for non-payment of rent. This was due to administrative delay in processing child support, and was not the result of any arrearage in temporary support payments.
On September 28, 1999, the trial court filed findings of fact, conclusions of law, and a trial decision. A final decree was then filed on December 27, 1999. In the decision, the court noted that the parties had reached agreement on most issues. Per agreement, Sherry received custody of two children, and child support was ordered, in the amount of $433 per month, per child. This amount was based on Anthony's stated income and Sherry's imputed income of $14,500 per year. At that time, the eldest child (age 15) was in the Montgomery County Juvenile Detention Center and no specific monetary sum was ordered for his support.
Anthony was ordered to pay $9,862 in marital debt, with the remaining $7,043 to be paid by Sherry. While the court noted some difference in debt allocation, it relied on several factors, including the parties' disparity in income, a substantial inheritance Anthony received after the divorce was filed, the fact that Anthony was living with a girlfriend who helped support his household, and $24,000 which Anthony had borrowed from his girlfriend.
As was noted above, the court ordered indefinite spousal support for Sherry in the amount of $750 per month. As a basis for the spousal support award, the trial court cited many factors, including those it had relied on when distributing the debts. Additionally, the court focused on Sherry's current zero income, her imputed income, and the 14 year duration of the marriage, during which Sherry had sacrificed her own earning ability to raise the children. The court also relied on:
 the court's inability at this time to determine an appropriate termination date for spousal support, due to the defendant's current enrollment in school for purposes of enhancing her employability; defendant's stipulated imputed income; defendant's unknown employment prospects while in school and upon graduation; the likelihood that defendant may need to work part-time, go to school part time, and delay her graduation, just in order to make ends meet after the divorce; the possibility that one or more parties may need to seek relief from bankruptcy; and the uncertain prospects concerning the oldest minor child.
The trial court did reserve jurisdiction to modify the award as to amount and duration.
As we mentioned, Anthony objects both to the duration and the amount of the spousal support award. Concerning the first point, both parties recognize the effect of the Ohio Supreme Court decision in Kunkle v. Kunkle (1990), 51 Ohio St.3d 64. According to Anthony, Kunkle indicates that most spousal support awards should end on a date certain, absent undue hardship. Anthony contends that the present case is not one involving undue hardship, due to Sherry's young age (38) and the fact that she is pursuing education which should make her able to support herself in just two years. By contrast, Sherry says indefinite support is appropriate, based on the long duration of the marriage and the fact that she is a single mother attending college. She also claims that Kunkle is distinguishable, since the trial court inKunkle did not retain continuing jurisdiction over the spousal support award.
We review support awards for abuse of discretion, meaning that we may not reverse unless we find the trial court acted arbitrarily, unreasonably, or unconscionably. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, and Booth v. Booth (1989),44 Ohio St.3d 142, 144. However, trial court decisions may be found unreasonable if they are not supported by a sound reasoning process. AAAA Enterprises, Inc. v. River Place Community UrbanRedevelopment Corp. (1990), 50 Ohio St.3d 157, 161.
Furthermore, while the trial court has broad discretion in support matters, Kunkle somewhat limits discretion as to the duration of support awards. In Kunkle, the Ohio Supreme Court clearly stressed that:
 except in cases involving a marriage of long duration, parties of advanced age or a homemaker-spouse with little opportunity to develop meaningful employment outside the home, where a payee spouse has the resources, ability and potential to be self-supporting, an award of sustenance alimony should provide for the termination of the award, within a reasonable time and upon a date certain, in order to place a definitive limit upon the parties' rights and responsibilities.
51 Ohio St.3d at 69.
Upon closely reading Kunkle, we find a number of factual similarities which require us to find that the trial court abused its discretion in failing to provide a termination date for spousal support. Specifically, in Kunkle, the wife was thirty-seven years of age, and was in good health. The marriage was eighteen years in duration. Id. at 68. Additionally, while the wife had been a homemaker, she had resumed her college education and estimated she could finish in four or five years. She also had three children at home, who were seventeen, fourteen, and six years of age. Id.
By comparison, Sherry Canfarelli was thirty-eight years old at the time of the divorce hearing and was in good health. The Canfarelli marriage was of fourteen years duration. Sherry also attended college, and estimated that she could earn between $25,000 and $31,000 per year after graduation. The minor children of the parties were fifteen, fourteen, and thirteen years old at the time of the final divorce decree. And, although some sexual abuse problems existed, the child who was responsible was not even living at home at the time of the spousal support award. Moreover, even assuming that Sherry might have to limit school to a part-time basis because of the children's needs or the press of finances, the youngest child was only five or six years away from high school graduation. Accordingly, we see no basis, underKunkle, for an exception to the rule established by the Ohio Supreme Court.
One distinction is that the ex-wife in Kunkle was dating a physician, who had expressed a desire to marry her. However, we do not think this justifies a different result, since the focus inKunkle was on the time when "under reasonable circumstances, the payee can become self-supporting." Id. at 68. To put it another way — courts should not focus on whether a payee has another person waiting in the wings to take over his or her financial support. Instead, all persons, male or female, should strive to be as self-sufficient as possible, without unduly burdening others. As we recently stressed, "a parent who is capable of being self-supporting may not indefinitely sit by and let the other parent bear a disproportionate share of expenses." In reKelsey Janis Tomson O'Herron (July 7, 2000), Montgomery App. Nos. 18213 and 18214, unreported, p. 18.
We also note that in cases where indefinite support has been allowed, the facts have been much different. For example, inGessler v. Gessler (May 16, 1997), Montgomery App. No. 16220, unreported, we found no abuse of discretion in an indefinite spousal support award. However, the wife in Gessler was sixty-five years old, had a high school education, and had never worked during the marriage. She also had limited work-related skills and was afflicted with an arthritic condition that affected her ability to use her hands. Id. at p. 8. Similarly, in Laynev. Layne (1992), 83 Ohio App.3d 559, we found that the trial court had abused its discretion in ordering a definite termination date (four years) for spousal support, where the marriage was twenty-six years in duration, and the wife was not employed outside the home, was in poor health, and was currently precluded from obtaining employment. Id. at 563.
Obviously, this type of decision is fact-intensive. However, we simply find no facts in this case which support the trial court's failure to provide a termination date for spousal support. Based on the record, we think the trial court may have been offended (as we are) by the fact that Anthony appears to have dissipated an inheritance of about $28,000 during the divorce proceedings, while his wife and children were on food stamps and were being evicted. In this regard, we note that Anthony complained at trial that his paycheck was not sufficient to live on after deduction of marital debts, child support, spousal support, and taxes. Anthony could have eased his financial situation by using the inheritance to pay off his share of marital debts. However, for the most part, he chose not to do so.
On the other hand, the temporary support orders of the court were not in arrears, and the money was Anthony's separate property. Therefore, neither the trial court, nor this court, may penalize Anthony for his actions, even if we think they were imprudent. As the court in Kunkle stressed, the statutory scheme for alimony "does not allow a court to fine, penalize or reward either party at the time of the divorce decree."51 Ohio St.3d at 70.
Furthermore, the trial court's failure in Kunkle to reserve continuing jurisdiction is not a significant point of distinction. In the first place, the Ohio Supreme Court did not rely on that fact in considering whether alimony should normally be ended at a date certain. Instead, the court mentioned it as an additional
reason to reverse. Id. at 72. In this regard, the Supreme Court noted that the trial court's support orders were internally inconsistent. Specifically, one order reserved continuing jurisdiction over spousal support, while later orders inconsistently modified or limited the court's future jurisdiction. Id. Concerning this issue, the court said:
 Taken together, these entries could be read to allow the alimony award to be unmodifiable even if the appellee remarried or cohabited for more than six months, so long as she was maintaining a home for any of the children (emancipated by age or not) or so long as she continued to be the "homemaker for her children." Such an interpretation would clearly negate the "need" factor.
Id. at 73. We see nothing in these remarks which affects the decision in the present case. All the Supreme Court meant was that if spousal support cannot be modified, even where circumstances indicate a lack of need, then need has been completely eliminated as a consideration. There is nothing unusual about this point.
In this regard, we note that if the trial court in this case had failed to reserve jurisdiction to modify the indefinite support award, that would clearly have been an abuse of discretion. See, e.g., Gullia v. Gullia (1994), 93 Ohio App.3d 653,661 (holding that failure to reserve jurisdiction to modify an indefinite award of support is an abuse of discretion). Our own district has even said that if spousal support is ordered for a substantial period of time and the economic condition of the parties is likely to change, a trial court abuses its discretion by not providing that the order is subject to later modification. See, e.g., Canales v. Canales (March 17, 1989), Greene App. No, 88 CA 52, unreported, p. 8 (trial court should have reserved jurisdiction to modify where four-year sustenance alimony was awarded), and Jackson v. Jackson (Nov. 8, 1996), Montgomery App. No. 15795, unreported, p. 3 (approving and following Canales, and holding that trial court should have reserved jurisdiction to modify, where support was awarded for three year period). As a result, we find nothing significant about the trial court's reservation of jurisdiction in the present case.
In light of the above discussion, we find that the trial court abused its discretion by failing to set a date certain for ending spousal support. Accordingly, the first assignment of error is sustained and this case is remanded for a decision on "the termination of the award, within a reasonable time and upon a date certain, in order to place a definitive limit upon the parties' rights and responsibilities." 51 Ohio St.3d at 69.
 II
In the second assignment of error, Anthony claims that the trial court erred in the amount of spousal support, i.e, in awarding $750 per month. According to Anthony, this amount exceeded his ex-wife's needs and also exceeded his own ability to pay. In this regard, Anthony first cites testimony in which Sherry said that she was able to meet current expenses, based on the $251 per week in temporary support that she received. However, this is not a complete picture of the testimony.
At trial, Sherry said she was able to meet her current expenses, if the support payments were processed in a timely way.
Unfortunately, that was not always the case. Specifically, at the time of the hearing, Sherry's family was being evicted from their apartment because two of the last four support payments had not been timely processed. Sherry also testified that processing problems had occurred in the past. Neither the support enforcement bureau nor Emery had admitted causing problems, but delays continued to occur. In our opinion, support should not be calculated so closely that children are in danger of becoming homeless simply because the support enforcement bureau or the obligor's employer cannot efficiently process payments.
As an additional matter, Sherry was not making any payments on marital debt at the time she testified. Since the trial court allocated over $7,000 of marital debt to Sherry, her financial needs were obviously going to increase. Accordingly, we think the trial court properly took the reasonable needs of Sherry and her children into account.
As we noted, Anthony also argues that the trial court failed to consider Anthony's own ability to pay spousal support. In this regard, Anthony focuses on the following comments of the trial court:
 [t]he court recognizes that the family support obligations which the law, and thus this decree, requires of the obligor in this case will make it difficult for him to also meet all of his obligations to third party creditors. * * * And while the court is aware of the obligor's debts to third party creditors, it has placed priority for the obligor's limited resources on family support obligations and not the third party debts. If the obligor's resources are insufficient, the court believes it is the third party creditors, and not the obligee or children, who should suffer the shortfall.
According to Anthony, these comments "foretell" that Anthony will be thrown into bankruptcy, but then arbitrarily announce that the third party creditors, and, thus, Anthony, must suffer. Anthony further claims that the decision reveals a "secret" that is apparently poorly kept, i.e, that the trial court uses some type of "formula" for spousal support which is not authorized by the legislature. However, we disagree.
First of all, if a formula exists, we are not aware of it. Second, Anthony has not suggested in his brief what the "formula" is or how it was applied in this case. Therefore, we have no way of evaluating this argument. Furthermore, based on our previous discussion, we find no abuse of discretion by the trial court. As we said earlier, Anthony could have placed himself in a favorable financial position by using his inheritance to satisfy his share of the marital debts. Because R.C. 3105.171 requires an equitable division of assets and liabilities, any divorce litigant may reasonably expect to pay an appropriate share of marital debt. Consequently, even if Anthony did not think he would have to pay all the debt, prudence would have dictated that some money be set aside. Obviously, Anthony did not have to use his inheritance for this purpose. However, dissipating such a large sum of money in the face of acknowledged debt does not make a later claim of poverty very persuasive.
In calculating spousal support, the trial court noted that after Sherry's imputed income, child support, and spousal support were added together, she and the two children would have about $29,000 annually for living expenses. By comparison, Anthony would have about $25,400 annually, after deducting spousal support, child support, and taxes. Under the circumstances, and given that both sides have marital debt to pay, the amount of spousal support was "appropriate and reasonable." R.C.3105.18(C)(1). Accordingly, the second assignment of error is without merit.
Based on the preceding discussion, the first assignment of error is sustained and the second assignment of error is overruled. The judgment of the trial court is reversed in part and is remanded to the trial court for a decision on termination of spousal support, "within a reasonable time and upon a date certain, in order to place a definitive limit upon the parties' rights and responsibilities." Kunkle, 51 Ohio St.3d at 69. In all other respects, the judgment of the trial court is Affirmed.
 __________________________ BROGAN, J.
GRADY, P.J., and WOLFF, J., concur.