LAYNE, Appellant,

v.

LAYNE, Appellee.

[Cite as *Layne v. Layne* (1992), 83 Ohio App.3d 559.]

Court of Appeals of Ohio,
Champaign County.

No. 92–CA–04.

Decided Nov. 10, 1992.

*Thomas J. Capper,* for appellant.

*Karl E. Paulig,* for appellee.

GRADY, Judge.

Judith A. Layne appeals from the judgment of the trial court adopting the report and recommendations of its referee concerning the division of marital property. Judith Layne's principal objections concern the limited nature of the award of spousal support and the manner in which the division of marital property was accomplished.

Appellant Judith Layne filed a complaint for divorce on August 16, 1990, against appellee David E. Layne. On February 6, 1991, a judgment entry of divorce was granted to both parties on stipulated grounds.

On May 7, 1991, an evidentiary hearing concerning property division was held before a referee. The referee recommended in his report and recommendations, filed on July 24, 1991, that Judith Layne receive spousal support of $475 monthly until March 31, 1995, that Judith Layne receive $314.50 monthly from David Layne's pension benefits upon David Layne's retirement, and that David Layne have the opportunity to purchase Judith Layne's equity of $41,750 in the marital real estate, which was valued at $83,500. Judith Layne filed timely objections to the recommendations of the referee.

On March 20, 1992, the trial court overruled appellant's objections and adopted the report of the referee. Judith Layne filed a timely appeal of the trial court's decision. The primary issues before this court concern the recommendation of the referee pertaining to spousal support, the apportionment of pension benefits, and the division of the marital residence.

The undisputed facts relevant to the issues on appeal are as follows. The parties were married on April 17, 1965, in Dayton, Ohio, and three, now emancipated, children were born of the marriage. Throughout their twenty-six-year marriage, David Layne was employed at Navistar International, where he has been a participant in the corporation's noncontributory retirement plan. The parties own a marital residence, which is not subject to indebtedness. Judith Layne was not employed during the course of the marriage and is currently in poor health.

Judith Layne has presented seven assignments of error, the first of which states:

"The referee erred to appellant's detriment by limiting appellee's obligation to pay spousal support until March 31, 1995."

The trial court enjoys wide latitude in awarding spousal support and its decisions are reversible only for an abuse of discretion. An abuse of discretion "connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *In re Jane Doe 1* (1991), 57 Ohio St.3d 135, 566 N.E.2d 1181; *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140.

The court's exercise of discretion is governed by R.C. 3105.18, which mandates that the court consider all of the relevant factors in that statute when making awards of spousal support. The court must evaluate the evidence germane to each applicable factor, then weigh the need for support against the

ability to pay. *Fletcher v. Fletcher* (Aug. 24, 1992), Montgomery App. No. 12942, unreported, 1992 WL 206646.

R.C. 3105.18(C)(1) requires the court to determine whether support is appropriate and reasonable, and, if support is warranted, its nature, amount, terms of payment, and duration. *Kunkle v. Kunkle* (1990), 51 Ohio St.3d 64, 554 N.E.2d 83, stands for the proposition that support should be terminable at some time prior to death or remarriage, but allowed that in marriages of long duration or those "involving a homemaker-spouse with little opportunity to develop meaningful employment outside the home," provisions for longer-term or permanent support may be warranted. *Id.* at paragraph one of the syllabus.

■ Judith Layne fits the exceptions noted in *Kunkle.* The marriage was of a twenty-six-year duration, during which Judith Layne was not employed outside the home. She is now in poor health. The court found that she is presently precluded from obtaining employment. The court then ordered support in the amount of $475 per month for less than four years. However, there is nothing in the record to suggest that Judith Layne's employment prospects will have improved during that time. It may be that the court ordered termination to induce appellant to improve her prospects of employment through education and training rather than to remain a burden to her former husband on a long-term basis. That is a proper goal. However, the court may fashion an order requiring her to do certain things, retaining jurisdiction to modify if she fails to do so. The same inducements will then operate, but the arbitrary character of the current order may be avoided.

As the court found that Judith Layne was currently unemployable and the record does not show when or how Judith Layne's need and David Layne's ability to pay will change at the point of termination of support, it was an abuse of discretion to order a definite termination date for spousal support. Accordingly, the first assignment of error is sustained.

Appellant's second assignment of error states:

"The referee erred to appellant's detriment by limiting appellee's spousal support obligation to $475.00 per month."

Judith Layne demonstrated approximately $1,350 per month in expenses, not including housing. The court ordered $475 per month in spousal support for less than four years and awarded her $41,750 in equity in the marital property. The only basis specifically indicated by the referee for the award of spousal support was his finding that Judith Layne had medical conditions which presently precluded normal employment, "together with the other factors set forth in Revised Code 3105.18 * * *."

■ In making an award of spousal support, a trial court is required to "indicate the basis for its award in sufficient detail to enable a reviewing court to determine that the award is fair, equitable, and in accordance with the law." *Kaechele v. Kaechele* (1988), 35 Ohio St.3d 93, 518 N.E.2d 1197, paragraph two of the syllabus.

■ The trial court has not indicated the basis of its award in sufficient detail to allow this court to determine if it is fair and equitable. The trial court did not articulate the rationale supporting the basis for its award of $475 per month, other than to state that it is based upon Judith Layne's present inability to work. The trial court made no findings as to the other relevant statutory factors listed in R.C. 3105.18(C)(1) pertaining to Judith Layne's needs, which appear to be substantially greater than her resources and the amount of the award. Accordingly, we will remand this issue to the trial court for more specific findings of fact and conclusions of law concerning spousal support.

The second assignment of error is sustained.

Appellant's third assignment of error states:

"The referee erred to appellant's detriment by limiting her award of appellee's pension to $314.50 per month while failing to take into account appellee's anticipated pension benefits to be received by him on April 1, 1995."

David Layne is a participant in the Navistar International Transportation Corporation Non–Contributory Retirement Plan. Under the plan all contributions on behalf of the participant are made by the employer, Navistar. David Layne has been a participant through the years of his marriage to Judith Layne, which coincide almost exactly with his years of participation in the plan.

■ Retirement benefits or the right to receive retirement benefits accumulated during the marriage are marital property, which the court must equitably divide and distribute between husband and wife in a divorce. See R.C. 3105.-171(A)(3)(a)(i). The court has broad discretion in dividing the benefit. An equal division is presumed under the statute to be an equitable division. In order to reach an equitable result, the court should attempt to preserve the pension or retirement asset in order that each party can procure the most benefit, while disentangling the parties' economic partnership so as to create a conclusion and finality to their marriage. *Hoyt v. Hoyt* (1990), 53 Ohio St.3d 177, 559 N.E.2d 1292.

The retirement plan concerned in *Hoyt* was also a noncontributory retirement plan. The same form of plan was considered by this court in *Fields v. Fields* (June 4, 1990), Miami App. No. 89–CA–58, unreported, 1990 WL 73685. It is characteristic of such plans that once the employee's right to participate vests,

the amount of his or her retirement benefit varies according to the participant's age and years of credited pension service at retirement. In many instances, including this case, the years of service closer to retirement produce a greater benefit than the earlier years produce. A residual benefit for the participant's surviving spouse is usually provided. This form of plan is typically a benefit provided to employees of a large company in several alternative options according to retirement date. The participant's choice of an option determines the amount and duration of the benefit received as well as that preserved for the surviving spouse.

■ David Layne's options for retirement are set out in two letters from an administrator of the Navistar plan, which are in the record. They show that at the time of the parties' divorce in 1991 David Layne was forty-eight years of age and had accrued 26.1 years of credited pension service in the Navistar plan. Had he then left Navistar's employ, he would have been eligible at age sixty-five to begin receiving a monthly pension of $629.01. If he continues in Navistar's employ he may retire as early as at age fifty-five. He would then have thirty years of credited pension service. If he elects to retire then, under current provisions of the Navistar plan he would receive a monthly pension of $1,600 until he reaches age sixty-two, after which he would receive monthly benefits of $852 for life.

David Layne is not now retired and has not elected to retire at either of the alternative dates available to him. Indeed, at the time of divorce he was seven years from his first eligible date for retirement, at age fifty-five. Because David Layne has not yet retired or elected an option, the retirement benefit he actually will receive is unknown.

*Hoyt* stressed that in making a division of the retirement asset the court "must understand the intricacies and terms of any given plan and, if necessary, require both of the parties to submit evidence on the matter to make an informed decision." *Id.*, 53 Ohio St.3d at 181, 559 N.E.2d at 1296. The two letters of the Navistar plan administrator do not discuss other options, if any, that are available to David Layne. Neither do they discuss a survivor's benefit to which Judith Layne may be entitled. The administrator does suggest that the court consider a Qualified Domestic Relations Order ("QDRO") that conforms to the Navistar plan, and he asks the court to "work with us before finalizing any agreement."

The purposes and features of a QDRO are discussed in detail in *Hoyt*. It is not necessary to repeat them here. Two features of a QDRO are pertinent to our inquiry. First, a QDRO conforms to applicable federal law governing pension benefits. Second, the form of order permits a division and distribution of *rights* to a benefit, the amount of which is as yet undetermined.

The trial court ordered counsel for David Layne to prepare a QDRO providing for the payment of $314.50 monthly to Judith Layne as her share of David Layne's benefit. This result achieves conformity with the federal tax regulations, but by arriving at a specific division of the benefit before its amount is determined the order defeats the second reason to order a QDRO: to avoid an order of distribution until the amount of the pension benefit is known.

The trial court placed a "present value" on David Layne's retirement benefit in the amount of $629 monthly, the benefit he would receive at age sixty-five had he left Navistar's employ at the time of the divorce. The same result on similar facts was rejected in *Hoyt.* The *Hoyt* court observed that in the instance of vested and matured benefits, where the amount is currently due and payable, the present cash value is fixed and easily ascertainable. Thus, it is capable of a current division and distribution. The benefit of such a division is that it disentangles the affairs of the parties and concludes their economic partnership. However:

"In a situation involving vested but unmatured retirement benefits, the trial court may reserve jurisdiction and either determine the parties' proportionate shares at the time of the divorce or determine proportionality when the benefits become vested and matured. In determining the proportionality of the pension or retirement benefits, the non-employed spouse, in most instances, is only entitled to share in the actual marital asset. The value of this asset would be determined by computing the ratio of the number of years of employment of the employed spouse during the marriage to the total years of his or her employment." *Id.,* 53 Ohio St.3d at 182, 559 N.E.2d at 1297–1298.

The alternate methods of distribution for vested but unmatured pension benefits endorsed in *Hoyt* recognize that the actual value of the asset will be determined by future contingencies: the participant's age and pension service credits at retirement. When the amount to be paid can only be determined at the later point of maturity at retirement, a current order should divide and distribute only the right to receive a share of the unmatured pension benefit, reserving determination of exact amounts to the later time when they are known. This method serves both objectives of an equitable division; it disentangles the affairs of the parties while producing an optimum value for each.

Because the ultimate value of a pension benefit, and of the respective shares of the spouses, increases with the number of years of service credit, an argument is frequently made that a former spouse is unjustly enriched when the value of his or her share is increased by post-divorce participation in a plan by the other spouse. For example, if David Layne retires at age fifty-five he will be entitled to receive $1,600 per month, or $53.33 for each of his thirty years of service. If Judith Layne is awarded one half of the portion representing the twenty-six

years of marriage, her share will be $693.33 per month. ($53.33 × 26 = $1,386.66 ÷ 2 = $693.33.) This is substantially more than her share as determined by the trial court, $314.50 monthly. However, it is not an unjust enrichment.

As we pointed out in *Fields, supra*, a retirement plan is an investment made by both spouses during marriage to provide for their later years. They anticipate that the value of the investment will increase with time. At divorce, each spouse is entitled to the value of his or her investment. When the investment has not yet matured, each is entitled to a right to its value at maturity in proportion to the years of marriage. The nonemployed former spouse is not entitled to share in the direct contributions made by the participant former spouse after divorce. However, the nonemployed former spouse is entitled to the benefit of any increase in the value of his or her unmatured proportionate share after divorce attributable to the continued participation of the other spouse in the retirement plan. That increase was contemplated when the investment was made. It would be inequitable to deprive the owner of its value. So long as each former spouse is limited to his or her proportionate right to share, there is neither unjust enrichment of the nonparticipant nor an inequitable deprivation of his or her rights.

We find that the trial court abused its discretion in dividing the retirement benefit as it did. R.C. 3105.171 requires an equitable division, adding that an equal division is mandated unless equity requires otherwise. There is no basis on the facts before us for other than an equal division of the value of the pension that accrued during the years of marriage. The court assumed that David Layne had retired at the time of the divorce, but that event has not occurred. In view of the nature of the pension, the assumption substantially undervalues Judith Layne's share. Until cash values are determined by retirement, the court's order is limited to a division of the rights of the spouses, and an order that Judith Layne receive a distributive portion of the benefits payable to David Layne on his retirement. That may readily be done through a QDRO, which reserves a determination of cash shares until retirement.

Appellant's third assignment of error is sustained.

Appellant's fourth assignment of error states:

"The referee erred to appellant's detriment by failing to afford appellant the first option to purchase the appellee's interest in the parties' real estate."

R.C. 3105.171 contemplates an equitable division of marital property. Under these circumstances, equity requires that each party be treated equally. The trial court has achieved this objective by dividing the equity in the marital residence equally between the spouses. The court's order provides for a sale of

the marital residence at a fair market value determined by the court. David Layne is given the first option to purchase Judith Layne's interest, perhaps because the record indicates she would have difficulty raising the funds to purchase his interest. If David Layne does not exercise his first option, then Judith Layne will have the opportunity to purchase his interest on the open market at the fair market value set by the trial court.

The trial court did not abuse its discretion by awarding David Layne the first option to purchase the marital real estate. Accordingly, this assignment of error is overruled.

Appellant's fourth assignment of error is overruled.

Appellant's fifth assignment of error states:

"The referee erred to appellant's detriment by limiting appellee's obligation to pay appellant's health insurance until March 31, 1995."

The Consolidated Omnibus Budget Reconciliation Act of 1985 provides for continued health insurance benefits for thirty-six months. Any continued need after that is a matter to consider in relation to spousal support. As the case is being remanded for reconsideration of the award of spousal support, the court may consider this issue as a part of that determination.

Appellant's fifth assignment of error is sustained.

Appellant's sixth assignment of error states:

"The referee erred to appellant's detriment by failing to require that the appellee pay and save the appellant harmless from the $11,000.00 indebtedness to Bank One for which the Oldsmobile automobile stands as security."

Judith Layne contends that David Layne should be held to his promises in pretrial negotiations of property settlement. He is not bound by those promises when the issue of property division is submitted to the court. This is a question of property division, and, in general, indebtedness follows the asset. The trial court did not abuse its discretion. Accordingly, the sixth assignment of error is overruled.

Appellant's seventh assignment of error states:

"The referee erred to appellant's detriment by failing to order appellee to pay appellant's reasonable attorney's fees incurred in the subject case."

An award of attorney fees is a matter within the sound discretion of the trial court. A decision to not award fees may not be reversed absent a clear abuse of discretion. *Birath v. Birath* (1988), 53 Ohio App.3d 31, 558 N.E.2d 63. One party's inability to pay his or her attorney is not a sufficient justification for ordering the adverse party to pay. We find no abuse of discretion.

The seventh assignment of error is overruled.

The judgment of the trial court will be reversed in part, as to appellant's first, second, third and fifth assignments of error, and the matter remanded for further proceedings consistent with our opinion.

*Judgment accordingly.*

WILSON and WOLFF, JJ., concur.