OPINION
Carl Bawidamann is appealing the judgment of the Greene County Common Pleas Court Domestic Relations Division which granted him a divorce from Frances Bawidamann and distributed their property.
On February 9, 1999, Carl Bawidamann, sixty-nine years old, petitioned the domestic relations court for a divorce from Frances Bawidamann, sixty-seven years old, his wife of 44 years.[1] Carl had previously worked for Koehring and as a postal worker. Likewise, Frances had been employed at Ameritech in two positions, which she described as a test man and a dispatcher. At the time of divorce both of the parties were retired and received Social Security payments. Additionally, Carl received payments from an annuity with the Federal Employee Retirement System and a small annuity from his employment with Koehring. Frances also received a monthly income from two deferred income accounts. Also, the parties had several stocks and accounts with a financial planner.
In October of 1998, Carl and Frances discussed with their financial advisor making a distribution of $10,000 to each of their three children. They were advised to wait until 1999 to make the distribution. In February of 1999, one week prior to Carl filing for divorce, Frances withdrew approximately $35,000 from their accounts, giving $30,000 to their children and using the remainder for taxes. Frances testified that Carl agreed to this distribution, while Carl asserts that the entire incident was a surprise to him.
Also, for the majority of the marriage, the parties' 38 year old son, John, resided with them. Frances testified that John was disabled due to being diabetic, blind in one eye, and suffering from neuropathy in his feet and arms. Additionally, she testified that while they had not claimed John as a dependent in 1997, he was claimed as a dependent in 1998. Also, Frances testified that even though John is employed part time, these earnings must go to pay his monthly medical bills of $738, and that she provided for the majority of John's support in providing him a place to live, purchasing his food, paying the electric and telephone, and other living expenses. At the time of the hearing, John continued to reside with Frances.
At the final hearing on May 16, 2000, an agreement between the parties was entered wherein Carl agreed to leave the marital home by August 23, 1999, and Frances would retain the home and compensate Carl for his interest therein. The parties left for the court to determine that final amount of payment and the method for the payment. The agreement also provided that the parties would attempt to divide the furniture between themselves and that Carl would pay half of the normal expenses for August and September of 1999. Also, another agreement was read into the record which set the value of the marital home as $215,000 with a mortgage still owing on it in the amount of $50,000 — 54,000. This agreement further provided that Frances would retain and refinance the parties' lawnmower which John used. The trial court rendered its decision on July 28, 2000, and on August 22, 2000, Carl filed his notice of appeal. Carl filed his appellate brief[2] on December 26, 2000, and Frances filed her appellate brief on March 16, 2001.
Carl raises eight assignments of error:
 1. THE TRIAL COURT ERRED IN ASSIGNING A VALUE TO MARITAL PROPERTY IN THE FORM OF FINANCIAL ASSETS BASED UPON EVIDENCE WHICH WAS EXCLUDED BY THE TRIAL COURT AND IN FAILING TO INCLUDE ANOTHER FINANCIAL ASSET.
 2. THE COURT ERRED IN ITS AWARD OF PERIODIC SPOUSAL SUPPORT TO [FRANCES] SINCE [FRANCES] HAS SUBSTANTIALLY MORE INCOME THAN DOES [CARL].
 3. THE COURT ERRED IN MAKING AN IN GROSS AWARD OF SPOUSAL SUPPORT TO [FRANCES] WHEN IT HAD NOT PROPERLY DIVIDED THE PROPERTY OF THE PARTIES IN TERMS OF FINANCIAL ASSETS AND WHEN SUCH AWARD WAS FURTHER BASED UPON AN IMPROPER DETERMINATION OF THE PARTIES' INCOME STREAMS TOGETHER WITH WRONGFUL CONSIDERATION OF THE LIVING ARRANGEMENTS OF THE PARTIES' ADULT SON.
 4. THE TRIAL COURT ERRED IN AWARDING TO [FRANCES] OFFSETS IN THE AMOUNT OF [$2,255.01] AGAINST [CARL'S] SHARE OF THE MARITAL ASSETS SINCE SUCH OFFSETS ARE IN CONTRAVENTION OF THE PARTIES' AGREEMENT MADE A PART OF THE RECORD ON AUGUST 6, 1999.
 5. THE TRIAL COURT ERRED WHEN IT AWARDED AN OFFSET IN THE AMOUNT OF [$4,000] FOR IMPOUNDED RETIREMENT MONEYS WHEN SUCH RETIREMENT MONEYS ACTUALLY ONLY TOTALED [$1,843] NET AND SINCE [FRANCES] RECEIVED THESE MONEYS IN THE DIVISION OF FINANCIAL ACCOUNTS.
 6. THE TRIAL COURT ERRED IN AWARDING TO [FRANCES] AN OFFSET FOR [HALF] OF [THE] UNPAID 1999 FEDERAL INCOME TAX IN THE AMOUNT OF [$8,000] SINCE IT EXCLUDED TESTIMONY OF THIS AMOUNT AS HERESAY {SIC} AT THE TRIAL OF THIS MATTER.
 7. THE TRIAL COURT ERRED IN AWARDING [FRANCES] AN OFFSET IN THE AMOUNT OF [$1,214.99] AS [HALF] OF THE REAL PROPERTY TAX OWED ON THE MARITAL RESIDENCE SINCE SUCH IS NOT SUPPORTED BY ANY CREDITABLE {SIC} EVIDENCE.
 8. THE TRIAL COURT ERRED IN FAILING TO FIND THAT [FRANCES] DISSIPATED MARITAL FUNDS IN THE AMOUNT OF [$35,294.11], WHICH SUM WAS IMPROPERLY DISTRIBUTED TO THE PARTIES' CHILDREN.
In reviewing the judgment of a trial court in the distribution of property for a divorce, a trial court has a great deal of discretion and its determination will not be disturbed absent an abuse of discretion. Booth v. Booth (1989), 44 Ohio St.3d 142. An abuse of discretion connotes more than a mere error of law, but rather that the court demonstrates an attitude which is arbitrary, unreasonable, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. When utilizing the abuse of discretion standard, an appellate court must be guided by a presumption that the trial court's findings are correct. Focke v. Focke (1992), 83 Ohio App.3d 552. Appellant's first assignment of error:
Carl argues that the trial court erred in assigning a value to Carl's federal employee retirement annuity as a financial asset of the marriage because testimony on the present value of the annuity was excluded at trial. Also, Carl asserts that the trial court failed to include his Koehring annuity. We disagree.
At trial, Frances proffered the testimony of David Kelley, an actuary, who testified that the present value of Carl's federal employee retirement annuity was $51,792.59. The trial court judge excluded this testimony without comment and excused himself during Mr. Kelley's testimony. However, in the trial court's decision when evaluating the financial assets of the parties, the trial court included in the calculation a value of $51,792.59 for the federal employee retirement annuity. Carl argues that the trial court improperly considered the testimony evidence of Mr. Kelley which was excluded.
However, evidence of Carl's monthly income from the federal annuity was admitted at trial. Frances asserts that the trial court likely arrived at a present value for the federal annuity by using Carl's expected life span and the dower and mortality tables. This is a similar process to what Mr. Kelley utilized, which explains reaching the same figure. Additionally, the trial court calculated a present value for his Koehring retirement annuity by using Carl's expected life span and the dower and mortality tables. As the trial court used this process on the Koehring annuity, it is likely that it used the same legitimate process for the federal employee retirement annuity. Therefore, we cannot conclude that the trial court improperly utilized the excluded evidence.
As for Carl's assertion that the trial court failed to consider Carl's retirement annuity from Koehring in its distribution, this is simply inaccurate. The $87.66 Carl receives from this annuity was included as a part of Carl's monthly income and listed as a financial asset for distribution. Bawidaman v. Bawidaman (July 28, 2000), Greene C. P. No. 99DR0066, unreported at 7, 10. Thus, Carl's first assignment of error is without merit and overruled.
Appellant's second assignment of error:
Carl argues that the trial court erred in awarding Frances monthly spousal support payments because he asserts that she has a greater monthly income than him. We disagree.
In calculating the parties' monthly income, the trial court found that each month Carl receives social security benefits in the amount of $1,396.00, federal employee retirement annuity payments in the amount of $435.00, Koehring's retirement annuity payments in the amount of $87.66, and a withdrawal from mutual fund in the amount of $2,000.00. Therefore, the trial court found that Carl's total monthly income was $3,918.66. As for Frances's monthly income, the trial court found that Frances receives every month social security benefits in the amount of $889.00, a distribution from American Funds account of $970.00, a distribution from an American Skandia annuity in the amount of $1,030.00. Thus, the trial court concluded that Frances's total monthly income was $2,889.00. Additionally, the trial court concluded that Carl receives $1,029.66 more a month than Frances.
Carl argues that this finding was incorrect because neither he nor Frances testified that he received a $2,000 withdrawal each month from a mutual fund account. However, an exhibit attached to the perpetuation deposition which was admitted as testimony at trial stated that starting on January 28, 2000, Carl began systematically withdrawing $2,000 each month. Therefore, although no testimony was given at the hearing that Carl receives $2,000 a month from a mutual fund account, evidence was presented at the hearing which showed Carl had this additional $2,000 a month income. Therefore, as sufficient evidence was presented on the issue, we cannot say that the trial court abused its discretion. Carl's second assignment of error is without merit and overruled. Appellant's third assignment of error:
Carl argues that the trial court erred in making a gross award of spousal support because the trial court had not properly divided the parties' financial assets, had improperly determined the parties' income streams, and had wrongfully considered the living arrangements of the son, John. We disagree.
Since R.C. 3105.18 requires that a court first determine the disbursement of property and then may award spousal support, Carl first argues that the gross award of spousal support was improper because the property of the parties was not accurately divided. As he asserted in his first assignment of error, Carl argues that the trial court improperly included his federal employee retirement annuity in the parties' financial assets. We find this argument without merit because we had previously determined that the trial court properly distributed the parties' financial assets, overruling the first assignment of error.
Next, Carl argues that the trial court's award of spousal support abrogates the parties' agreement for Frances to compensate Carl for his share of the equity in the home. The parties had stipulated that the value of the home was $215,000 and the trial court found that the mortgage remaining on the home was $54,000, leaving $161,000 of equity in the home. The trial court found that each party's share in the equity of the home was $80,500. Then, the trial court ordered a gross spousal support award to Frances in the amount of $80,500, which would be offset against the $80,500 Frances would have been required to compensate Carl for his share of the equity in the home. Carl asserts that this abrogates the parties' agreement wherein Frances agreed to provide some compensation to Carl for his interest in the house and which permitted the court to determine the amount and method of compensation. However, the parties' agreement did not place any limitations on the award of spousal support. Although the gross award amount is equivalent to Carl's equity in the marital home, this does not abrogate the agreement. The trial court ruled that Carl's share of the equity was $80,500 and in so doing met the terms of the agreement. Thus, the court's further award of gross spousal support in the same amount was not impermissible.
Finally, Carl asserts that the trial court erroneously determined the income streams of the parties and considered that Frances is supporting their son, John. When considering the factors for spousal support, the trial court stated in its opinion:
 When an award of spousal support is made the [c]ourt must consider all applicable factors listed in 3105.18(C). The [c]ourt has considered the parties income from all sources and it is determined that [Carl] receives [$1,029.66] more per month in income than [Frances.] Both parties are advances in age but each stated that they are in sound health; this was a marriage of long duration that lasted forty-three years; both parties are receiving Social Security benefits and retirement benefits; the parties enjoyed a high standard of living; the education levels of the parties parity each other; and the [c]ourt may consider any other factor that it finds to be relevant.[Frances] is sixty-eight years old and wishes to remain in the marital residence. The [c]ourt finds that it would be unjust and inequitable to require her to reduce her stream of income in order to do so. Further, [Carl] stated that their adult child, John, suffers from medical complications associated with diabetes and has lived with the parties most of his life.
John can only work part-time because of his condition. [Frances] pays for his insulin and a substantial portion of his medical expense. The parties have claimed John as a dependent on their federal income taxes in the past. Bawidaman, supra at 4-5.
Carl asserts that the trial court erred in considering the income streams of the parties when determining spousal support because Carl argues that the trial court erred in calculating his monthly income as described in the second assignment of error. However, we previously determined that the trial court did not err but properly calculated the parties' monthly incomes. Carl had a significantly greater income per month than Frances and the trial court found that it would be inequitable for Frances to have to reduce her income stream to remain in the home. Also upon considering the very long duration of the parties' marriage and the high standard of living of the parties, a gross spousal support award of $80,500 is not unreasonable based on principles of equity. The trial court only considered Frances's caring for John as an additional relevant factor. Both Carl and Frances had consented to his living with them and had claimed him as a dependent due to his medical condition. While it was not problematic to consider this factor, there was sufficient basis for the gross spousal support award without consideration of the son. Thus, we cannot find that the trial court when determining an equitable result was arbitrary, unreasonable, or unconscionable in making this award. The trial court did not abuse its discretion and Carl's third assignment of error is without merit and overruled.
Appellant's fourth assignment of error:
Carl argues that the trial court erred in granting an offset of $2,255.01 for half of the normal expenses for August and September of 1999. We disagree.
In a divorce, a trial court has broad discretion in determining a marital property division. Layne v. Layne (1992), 83 Ohio App.3d 559,564. A reviewing court should not review discrete aspects of a division of property outside of the context of the entire award, but rather should consider the distribution within the totality of the circumstances. James v. James (1995), 101 Ohio App.3d 668.
The parties' agreement provided that Carl would pay half of the normal expenses for August and September related to the house. Carl argues that this should be construed only as half of the mortgage payments and the normal utilities. Therefore, Carl argues that the trial court erred when it ordered an offset of $2,255.01 for the August and September expenses. When calculating the amount for the offset, the trial court included the house payment, television repair bill, satellite repair bill, the second mortgage payment, the power bill, the water service bill, the phone bill, security bill, the charge for a new rotor, carpet cleaning bill, the charge for a Sears service call, the bill for a new dishwasher, the car payment, Carl's visa bill, and a payment on the lawn mower. Frances had offered exhibits that were admitted which listed her expenses for the months of August and September. A trial court may use its discretion in a property distribution. The trial court could properly consider as the "normal expenses" the expenses which had been paid in the previous months when Carl resided in the marital home. Additionally, Carl did not move out of the home until nearly the end of August.
Therefore, he was present and incurred the August bills, such as the television and satellite repair. Thus, we cannot find that the trial court was arbitrary or unreasonable in ordering an offset for these expenses as they all appeared to be normal expenses incurred for the months of August and September. Carl's fourth assignment of error is without merit and overruled.
Appellant's fifth assignment of error:
Carl argues that the trial court erred in awarding an offset of $4,000 for impounded retirement money when only $1,843 was impounded. We agree.
During the divorce proceedings, Carl obtained an ex parte court order impounding Frances's retirement moneys. As Frances's retirement income was her only means of support, Frances was forced to take out a signature loan in the amount of $4,000 to meet her monthly bills. However, the ex parte order was then lifted and only Frances's income for the month of March had been impounded. Frances testified at trial that she receives $1,843 a month. Therefore, Carl argues that the trial court should have only granted Frances an offset in the amount of $1,843. We agree. Although the trial court may have been punishing Carl for the ex parte impounding of Frances's only means of support, we find that this is unreasonable. Thus, the trial court abused its discretion and we reverse the trial court's decision, which should have only given Frances an offset of $1,843 and thereby Carl is owed a credit of $2,157. Carl's fifth assignment of error is sustained. Appellant's sixth assignment of error:
Carl argues that the trial court abused its discretion in awarding Frances an offset of $8,000 for the unpaid 1999 Federal income taxes. We agree.
At trial, Frances testified that the money they had requested be withheld for taxes from the withdrawals from their accounts was insufficient and that they would owe the Federal government taxes on this income. Frances attempted to also testify that the additional money owed as taxes was $16,000, but this information was hearsay testimony she had learned from her accountant. As such, the testimony was objected to and stricken. Therefore, no testimony was given as to how much additional money was owed on the 1999 Federal income taxes. Thus, without any estimate of the unpaid taxes due, it was unreasonable of the trial court to award an $8,000 offset to Frances for the unpaid 1999 Federal income taxes. This assignment of error is sustained and the judgment of the trial court is reversed and remanded for a determination of the actual amount of 1999 Federal income taxes due and to give Frances an offset for half of that amount.
Appellant's seventh assignment of error:
Carl asserts that the trial court erred in granting Frances an offset of $1,214.99 for half of the owed real property tax on the marital home when he had testified that he had paid $665.35 of the real property tax. We disagree.
At trial, Frances testified that she had to pay $2,429.08 for the real property tax on the residence. As evidence, Frances admitted as an exhibit a copy of her canceled check for that amount which she had paid for the real property taxes on February 3, 1999. Frances testified that Carl had never compensated her for the real property taxes despite being ordered by the court to pay half of the taxes. Carl, however, testified that he had paid $665.35 in May of 2000, seven months after the trial court ordered him to do so. Carl did not admit into evidence a canceled check or a receipt. Further, Carl acknowledged that this was not half of the taxes due. The trial court in its decision found that half of the amount of real property taxes due was $1,214.99 and the trial court ordered an offset for Frances for that amount.
Carl argues that determination was an abuse of discretion because there was no credible evidence to support this award. Carl points to a statement by Frances's attorney during Carl's cross examination, in which the attorney points out that the receipt Carl has provided as proof that he paid the taxes, states that the amount of taxes due is $1,978, making Carl's alleged payment of $665.35 less than half of that amount. This receipt was never admitted into evidence and yet, Carl relies upon this statement by Frances's attorney to state that no credible evidence existed to support the trial court's finding that half of the real property taxes due was $1,214.99. However, Frances's testimony and the copy of her canceled check in the amount of $2,429.08 was sufficient credible evidence to warrant the trial court's finding that half of the real property taxes due was $1,214.99, that Carl had made no payment on those taxes, and to award Frances an offset in that amount. Carl's seventh assignment of error is without merit and overruled. Appellant's eighth assignment of error:
Carl argues that the trial court abused its discretion in failing to find that Frances had dissipated marital funds in the amount of $35,294.11. We disagree.
On February 2, 1999, Frances withdrew $35,294.11 from marital funds and gave $10,000 to each of their three children and reserved the remainder for income taxes on this amount. Carl testified that in October of 1998, he and Frances had discussed with their financial planner, Mr. Spurgeon, giving $10,000 to each child as a means of reducing their tax burden. Frances testified that the $10,000 gifts were Carl's idea and that at the October meeting Carl had agreed that they would give $10,000 to each child, but that they were advised to wait until the new year to make the disbursements for tax reasons. Moreover, Frances testified that she witnessed Carl tell two of their children that they would each be receiving $10,000 from them. Additionally, a letter from Mr. Spurgeon was admitted into evidence which noted that Carl had agreed at the October 1998 meeting to the disbursement of nearly $35,000 in the year 1999 in order to give $10,000 to each child. Further, when Carl was questioned about this letter he stated that in October he would have agreed to the distribution. Therefore, Carl's claim that the $10,000 gifts came as a surprise to him in February is disingenuous. As sufficient evidence was presented that both parties agreed to the distribution, we cannot find that the trial court abused its discretion in finding that the incident was not financial misconduct and thereby excluding the $30,000 as a marital asset. Carl's eighth assignment of error is without merit and overruled.
The judgment of the trial court is affirmed in part, reversed in part, and remanded for further proceedings.
 ______________________ FREDERICK N. YOUNG, J.
WOLFF, P.J. and BROGAN, J., concurs.
[1] For clarity, we will hereinafter refer to the parties by their first names, Carl and Frances.
[2] App.R. 19 provides that appellate briefs shall have "double spacing between each line of text except quoted matter which shall be single spaced." Carl's brief violated App.R. 19 by the entire document being single spaced. Pursuant to local App.R. 2.2 (B), we may return for reformation a brief which fails to comply with App.R. 19. However, we will consider his brief despite the error.