OPINION
{¶ 1} This is an appeal from a final judgment and decree of divorce.
 {¶ 2} Robert and Sharon Puls were married on September 28, 1984. Robert[1] was employed by Whirlpool, Inc. beginning in January, 1990. Two children were born of the marriage. On March 1, 2001, Sharon commenced this action for divorce. The domestic relations court granted a final judgment and decree of divorce on March 31, 2004. Robert filed a timely notice of appeal.
 {¶ 3} First assignment of earror
 {¶ 4} "The trial court erred and abused its discretion by determining that the appellee has a marital share included in the package received by the appellant at the time of his retention by whirlpool."
 {¶ 5} All property or any interest therein which either party acquires "during the marriage" is marital property and must be divided equally between them. R.C. 3105.171(A)(3)(a)(i)-(ii), 3105.171(C)(1). If the court finds that an equal division would be inequitable, it shall divide the property in a manner it finds equitable. R.C. 3105.171(C)(1).
 {¶ 6} R.C. 3105.171(A)(2)(a) defines "during the marriage" as the period of time between the date of the marriage and the final hearing in the action for divorce. However, the court has discretion to select beginning and termination dates that it considers equitable in dividing marital property. R.C. 3105.171(A)(2)(b).
 {¶ 7} The trial court made the following finding with respect to marital property and its valuation: "[T]he term `during the marriage' shall be from September 22, 1984 through March 31, 2001."[2]
(Decision, p. 7) Neither party argues that the court erred or abused its discretion in making this finding.
 {¶ 8} On April 20, 2001, Whirlpool informed Robert that it was relocating his position to its plant in Michigan. Robert declined an offer to relocate, and Whirlpool offered him a "Retention Package" in addition to his regular salary should he agree to remain until October 31, 2001 to complete ongoing projects. The amount of the package was calculated based, in part, on the length of his service with Whirlpool. Robert accepted the offer and was paid $38,416 on November 15, 2001.
 {¶ 9} The court found that the Whirlpool retention package is a severance package and constitutes marital property because "some portion of the monies were determined based upon Robert's [140 months] of service at Whirlpool." (Decision, p. 23)
 {¶ 10} We previously have held that severance packages are intended to compensate employees for prospective, not retrospective, lost wages.McClure v. McClure (1994), 98 Ohio App.3d 27. While pension payments are deferred compensation earned during the working years and clearly marital property, severance payments, often calculated as a function of the employee's years of service, are prospective in nature and intended to compensate an employee for future lost wages. Id. at 40-41.
 {¶ 11} Here, the court determined that the retention package was actually a severance package, notwithstanding the name given it by Whirlpool. We find no reason to disagree with that finding. However, severance packages are prospective, and this package, offered on April 20, 2001, encompassed income Robert earned after the date the marriage had ended.
 {¶ 12} With respect to the calculation that was used, rights to property that vest during the marriage are subject to division by the court. See Layne v. Layne (1992), 83 Ohio App.3d 559. The point of determination is not whether the one hundred forty months coincided with the duration of the marriage, but whether Robert's right to the payment vested during the marriage. Again, the retention package was not even offered until April 20, 2001, and therefore did not vest until after the date on which the court found the marriage had terminated for purposes of property division, March 1, 2001.
 {¶ 13} Because the severance package was prospective in nature and Robert's right to the payment had not vested during the marriage, it is not marital property but his separate property. Therefore, the trial court erred in awarding Sharon a portion of it.
 {¶ 14} The first assignment of error is sustained.
 {¶ 15} Second assignment of error
 {¶ 16} "The trial court erred and abused its discretion by naming the appellee as the residential parent because she has not fulfilled her responsibility of attending therapy."
 {¶ 17} R.C. 3109.04(B)(1) requires courts to take the best interest of the child under consideration when allocating parental rights and responsibilities. R.C. 3109.04(F)(1) identifies ten factors the court shall consider when determining what is the best interest of the child. The fifth factor, R.C. 3109.04(F)(1)(e), requires the court to consider the mental and physical health of all parties in making its determination.
 {¶ 18} The statutes governing allocation of parental rights and responsibilities for care of children allow the trial court, in exercise of its sound discretion, to designate one parent as the residential parent and legal custodian of the child or allocate rights to both parents under a shared parenting plan. Snyder v. Snyder (June 7, 2002), Clark App. No. 2002-CA-6, 2002-Ohio-2781. An abuse of discretion implies not a mere error in judgment, but an action that is unreasonable, arbitrary, or unconscionable. State ex rel. Verhovec v. Mascio (1998), 81 Ohio St.3d 334,336, 1998-Ohio-431.
 {¶ 19} Robert asked the court to adopt his proposed shared parenting plan in October of 2001. The court appointed a psychologist, Dr. Larry Pendley, to conduct an evaluation of the family and to make a recommendation regarding parental rights. It also interviewed the children and heard testimony from friends of the family and Robert's father concerning the level of each parent's participation in raising the children. The court found that the best interest of the children would be served by appointing Sharon as the custodial parent, and it denied Robert's motion for shared parenting.
 {¶ 20} The court heard Dr. Pendley testify that the MMPI data in Sharon's psychological evaluation suggests that she suffers from hysteria, depression, psycothenia, schizophrenia, introversion, and neurosis. He conceded that those indicia may lead to the conclusion that Robert should have custody. However, he testified that Sharon is dealing appropriately with those ailments and recommended that she be the custodial parent. The court also heard testimony from friends of the couple that Sharon served as the primary care-giver throughout the marriage and maintained a calm and rational demeanor with the children.
 {¶ 21} Robert argues that the court misapplied R.C. 3109.04(F)(1)(e) factor and abused its discretion when it designated Sharon as the residential parent. He bases this argument on the court's knowledge that Sharon had discontinued attending therapy sessions designed to help her cope with various mental ailments, coupled with Dr. Pendley's testimony that they were a key part of her ability to "deal appropriately" with these issues. Robert argues that Sharon's unilateral decision to discontinue therapy for various mental ailments demonstrates that the court abused its discretion when it failed to designate him the residential parent pursuant to R.C. 3109.04(F)(1)(a). We disagree.
 {¶ 22} The court was charged to balance all relevant R.C. 3109.04(F)(1) factors in light of the evidence presented. It did so. The court was aware that Sharon had unilaterally terminated her therapy appointments, and acknowledged Robert's concerns when it rendered its decision. The court interviewed both children, and noted the older child's desire to live with her mother if she couldn't spend time equally with each parent. R.C. 3109.04(F)(1)(b). The court noted the good relationship the children had with each parent and considered the impact on the chilren's school and extracurricular activities. R.C. 3109.04(F)(1)(c) and (d). It noted Sharon's cooperation with the existing visitation schedule, and the general good physical health of all parties. R.C. 3109.04(F)(1)(i) and (e).
 {¶ 23} The R.C. 3109.04(F)(1) factors must be considered as a whole rather than an all-or-nothing ten-part test, as Robert would have us find. The court weighed the relevant factors in making its determination and designated Sharon as the residential parent. Robert has not shown that this determination is an abuse of discretion.
 {¶ 24} The second assignment of error is overruled.
 {¶ 25} Third assignment of error
 {¶ 26} "The trial court erred and abused its discretion in ordering the standard order of parenting time"
 {¶ 27} R.C. 3109.04(F)(2) identifies five factors, taken in addition to the ten identified in R.C. 3109.04(F)(1), which the court must consider when either party requests an order of shared parenting. The only factor at issue here, R.C. 3109.04(F)(2)(a), requires the court to consider the ability of the parents to cooperate and make decisions jointly with respect to the children.
 {¶ 28} Robert asks us to reverse the trial court's rejection of his motion for shared parenting. He argues that the trial court abused its discretion when it denied his motion and instead imposed the standard order of parenting time, based on its finding that he and Sharon can not cooperate on matters concerning the children. We disagree.
 {¶ 29} First, we note that the court did not impose the standard order of parenting as Robert suggests. The court granted the standard order with an additional visitation day each week from Wednesday night at 6:00 until Thursday morning at 9:00.
 {¶ 30} Second, domestic relations courts may, in the exercise of the discretion conferred on them, allocate parental rights to both parents under a shared parenting plan, or designate one parent as the residential parent and legal custodian of the child. Snyder, supra. It is not an abuse of discretion for a court to deny a motion for shared parenting when it determines that the parents lack the ability to cooperate and make shared parenting decisions. See e.g., de Levie v. de Levie (1993),86 Ohio App.3d 531, 539.
 {¶ 31} The trial court fully considered Robert's request. Testimony from Dr. Pendley and Robert's father suggests that the children are equally comfortable with either parent. Dr. Pendley testified that a shared parenting arrangement as proposed in Robert's motion is not feasible due to the parties distrust and anger with each other and inability to work together. He recommended that the trial court appoint Sharon as the custodial parent.
 {¶ 32} Robert argues that the parties' inability to work together is chargeable to Sharon. Sharon testified that she is afraid of Robert, evidenced by a civil protection order, and doesn't want to have to "deal with him." While Sharon's inability to "deal" with Robert can impact the children's best interests, she testified she would do what she had to in order to comply with the parenting order. Divorced parties are not required to do more.
 {¶ 33} The court also heard extensive testimony concerning the problems which arose as the parties attempted to communicate by phone and email. Finally, the court left the door open for a shared parenting arrangement sometime in the future, when the "parents' relationship with each other improves."
 {¶ 34} On this record, we find nothing unreasonable, arbitrary, or unconscionable in the court's decision. Verhovic, supra. No abuse of discretion is shown and we affirm the court's denial of shared parenting.
 {¶ 35} The third assignment of error is overruled.
 {¶ 36} Fourth assignment of error
 {¶ 37} "The trial court makes no finding regarding appellee's demeanor."
 {¶ 38} Robert is correct, the trial court made no finding concerning Sharon's demeanor before the court. However, there is no case law, rule or statute that required it to do so.
 {¶ 39} The fourth assignment of error is overruled. {¶ 40} The first assignment of error is sustained and the remaining three are overruled. The matter is remanded to the trial court for further proceedings consistent with this opinion.
Fain, J. and Donovan, J., concur.
[1] For convenience, the parties will be referred to by their first names.
[2] With the agreement of the parties, the court later amended the date of termination of the marriage to March 1, 2001. However, the change in dates is irrelevant to the issue before us.