[Cite as *Keaton v. Keaton*, 2016-Ohio-231.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY**

| | | |
|---|---|---|
| KARIN B. KEATON | : | |
| | : | |
| Plaintiff-Appellant | : | C.A. CASE NO. 2014-CA-50 |
| | : | |
| v. | : | T.C. NO. 12DR298 |
| | : | |
| RICKY E. KEATON | : | (Civil appeal from Common Pleas |
| | : |  Court, Domestic Relations) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . .

**O P I N I O N**

Rendered on the ___22nd___ day of ____January___, 2016.

. . . . . . . . . .

DAVID M. McNAMEE, Atty, Reg. No. 0068582 and MATTHEW J. BARBATO, Atty. Reg. No. 0076058, 2625 Commons Blvd., Suite A, Beavercreek, Ohio 45431
        Attorneys for Plaintiff-Appellant

DAVID L. PENDRY, Atty. Reg. No. 0002822, 133 East Market Street, Xenia, Ohio 45385
        Attorney for Defendant-Appellee

. . . . . . . . . . . .

DONOVAN, P.J.

{¶ 1} Plaintiff-appellant Karin B. Keaton appeals from a decision of the Greene County Court of Common Pleas, Domestic Relations Division, awarding attorney's fees to defendant-appellee Ricky E. Keaton, amending the division of the Ohio Public Employees Retirement System (OPERS) property order in the parties' final judgment and

decree of divorce, and sentencing Karin to ten days in the Greene County Jail for being found in contempt. Karin filed a timely notice of appeal with this Court on November 5, 2014.

{¶ 2} Ricky and Karin were married on April 13, 1976. The parties had one child as a result of the marriage. On September 21, 2012, Karin filed a complaint for divorce. Ricky filed an answer and counterclaim for divorce on November 29, 2012. On December 17, 2012, the trial court issued an order requiring Ricky to pay a temporary spousal support award of $500.00 per month retroactive to December 1, 2012.

{¶ 3} A Final Judgment and Decree of Divorce was filed on August 21, 2013, thereby terminating the marriage. At the time that the parties divorced, their child was emancipated. The divorce decree contained an equitable distribution of marital assets. At issue in the instant appeal was a provision of the decree requiring Karin to sell two Harley-Davidson motorcycles and a travel trailer jointly owned by the parties within thirty days of the filing of the divorce decree. Upon selling the jointly owned property, Karin was to remit half of the proceeds from the sale to Ricky.

{¶ 4} On October 9, 2013, Ricky filed motion to show cause why Karin should not be held in contempt for failure to abide by the provisions in the divorce decree. Specifically, Ricky asserted that the parties had negotiated with a third-party buyer for the motorcycles and trailer for a price of $12,500.00. Ricky argued that despite the prior negotiations, Karin had unilaterally decided to sell the motorcycles and trailer to another party for $7,100.00. Moreover, Karin kept all of the proceeds from the sale and did not divide them with Ricky as mandated by the divorce decree. Ricky also argued that Karin intentionally failed to appear for a scheduled meeting between the parties at her attorney's

office on September 4, 2013.

{¶ 5} The record establishes that a hearing was held on January 30, 2014, regarding Ricky's motion to show cause. In a decision issued on March 20, 2014, the trial court ordered the parties to complete the property distribution contemplated in the divorce decree. The trial court also found Karin in contempt in light of her failure to follow the terms of the divorce decree. The trial court ordered the parties to return for a sentencing/compliance hearing on May 28, 2014, in order to determine what, if any, progress had been made with respect to the property distribution and to provide Karin with an opportunity to purge the contempt finding. On May 28, 2014, however, Karin failed to appear for the hearing, and the trial court issued a bench warrant for her arrest.

{¶ 6} On July 1, 2014, Ricky filed a motion for attorney's fees and for modification of the divorce decree and property division order. On July 8, 2014, the trial court issued a judgment entry recalling the bench warrant for Karin's arrest and scheduled a hearing on Ricky's motion for attorney's fees for October 13, 2014. At the hearing, the trial court found Karin to be in contempt for failure to abide by the terms of the divorce decree. The trial court ordered Karin to pay Ricky $5,720.00 in attorney's fees, in addition to $6,250.00, that sum representing one-half of the price of the two motorcycles and trailer, for an aggregate total of $11,970.00. The trial court also ordered Karin to serve thirty days in jail, but only required her to serve ten days of the sentence.

{¶ 7} It is from this judgment that Karin now appeals.

{¶ 8} Karin's first assignment of error is as follows:

{¶ 9} "THE TRIAL COURT ERRED WHEN AWARDING ATTORNEY'S FEES TO THE DEFENDANT."

{¶ 10} In her first assignment, Karin contends that the trial court erred when it ordered her to pay Ricky $5,720.00 in attorney's fees that were incurred as a result of her violation of the divorce decree for which she was found in contempt. Initially, we note that Karin does not challenge the trial court's decision holding her in civil contempt. Rather, she argues that the trial court erred when it ordered her to pay Ricky's attorney's fees without first determining whether she had the ability to pay and still provide for her own basic needs.

{¶ 11} R.C. 3105.73 provides as follows:

(A) In an action for divorce, * * * a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award of fees is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate.

{¶ 12} "The decision to award attorney's fees rests in the sound discretion of the trial court and will not be overturned absent an abuse of that discretion. *Layne v. Layne* (1992), 83 Ohio App.3d 559, 568, 615 N.E.2d 332." *Gore v. Gore,* 2d Dist. Greene No. 09–CA–64, 2010–Ohio–3906, ¶ 34. In *Gore,* this Court noted that " '[i]mportant considerations when a trial court computes an award of attorney's fees include the time and labor involved and the fee customarily charged in the locality.' * * * We have also said, however, that these are only two of many factors that a trial court should consider. * * * The quality of work done is also a proper consideration. * * *." *Id.* at ¶ 35.

{¶ 13} In support of her argument that the award of attorney's fees was

unreasonable because of her inability to pay, Karin cites two cases from the Eighth Appellate District, *Swanson v Swanson*, 48 Ohio App.2d 85, 355 N.E.2d 894 (8th Dist.1976), and *McCoy v. McCoy*, 91 Ohio App.3d 570, 632 N.E.2d 1358 (8th Dist.1993). However, in both cases, the main issue concerned whether the trial court properly awarded attorney's fees as part of an alimony order. While the ex-spouse's ability to pay was a factor, the court in *McCoy* found that plaintiff's counsel offered itemized evidence of the services rendered, the difficulties encountered and the reasonableness of the work and the hourly rates charged. *Id.* at 584. Furthermore, the court noted that the evidence of attorney fees was supported by expert testimony of an experienced domestic relations practitioner. *Id.*

{¶ 14} At the hearing on October 13, 2014, Ricky offered the following testimony of Pete Stephan, a veteran attorney who practiced in Greene County for approximately thirty-six years:

Defense Counsel: And are you familiar with the fees that are generally charged by attorneys within the community of Xenia and Greene County?

Stephan: Yes.

Q: And have you practiced actively, in the past, in the area of domestic relations law?

A: In the past, I have.

Q: And have other members of your law firm also been active in the practice of domestic relations law?

A: Yes.

Q: Mr. Stephan, I'd like to refer you specifically to Exhibit Sentencing A, so that I can distinguish this hearing from other hearings, and I'm going to ask if you can identify Exhibit A, to the best of your knowledge.

A: Yes.   This is your billing statement in this case.

***

Q: And specifically, do you have any comments relative to the billing statement that has been provided to you for the purposes of attorney's fees on the contempt matter in this case?

A: I have reviewed the billing statement marked as Exhibit Sentencing A.   I have reviewed it.   *I feel that it is fair and reasonable for legal services in this area.*   I do note that there were 38 notations for time, eight of which were more than an hour, which I find to be, quite frankly, commendable because that showed that there was a real attempt to be reasonable as far as your billing statement is concerned.   That the two most – the two areas that were the highest level of billing concern, concern meetings with you and other individuals to divide or meet to attempt to settle the case.   And I note on your note it says that Ms. Keaton [Karin] did not show for either one of those.

Your billing at $200.00 an hour, quite frankly, I feel is below the normal for someone of your ability in Greene County, Ohio.

Q: Thank you.   And what dates do the – does this billing statement concern as far as the request for attorney's fees?

A: 9-3 of 2013 until 8-7 of '14.

Q: And do you find this to be a fair billing statement for the services provided in this particular case, pursuant to your review?

A: Yes.

**{¶ 15}** In addition to Attorney Stephan's testimony regarding the reasonableness of the fees charged by Ricky's counsel, Karin provided no testimony with respect to her alleged inability to pay. In fact, at the time of the award of attorney's fees, Karin was receiving approximately 47% of Ricky's OPERS retirement distribution, which totaled $1,100 per month. Moreover, the record established that Karin had kept approximately $3,600.00 of Ricky's money by unlawfully retaining all of the proceeds from the unilateral sale of the two motorcycles and trailer in direct violation of the divorce decree and prior court order.

**{¶ 16}** Ricky provided the trial court with an itemization of the time incurred by his attorney, the expenses incurred during the contempt proceedings, and a summary of the attorney fee expenses. Ricky also included evidence of the fee agreement between himself and counsel. Significantly, Ricky presented the testimony of Attorney Stephan who established that the attorney fees were both reasonable and necessary for domestic relations litigation in Greene County, Ohio. Upon review, we cannot find anything in the record which establishes that the award of attorney's fees was unfounded, contrary to law, or otherwise improper. Accordingly, we find that the trial court did not abuse its discretion in ordering Karin to pay Ricky's attorney's fees incurred during the course of the contempt proceedings.

**{¶ 17}** Karin's first assignment of error is overruled.

**{¶ 18}** Karin's second and final assignment of error is as follows:

{¶ 19} "THE TRIAL COURT ERRED WHEN IT DETERMINED THE VALUE OF THE 2000 HARLEY DAVIDSON, THE 2006 UTITLITY TRAILER AND THE 1993 HARLEY DAVIDSON."

{¶ 20} In her final assignment, Karin argues that the trial court erred when it determined the value of the two motorcycles and trailer to be $12,500.00. "A fair and reasonable valuation," we have said, is critical to an equitable division of marital property. *Young v. Young*, 2d Dist. Clark No. 08-CA-59, 08-CA-61, 2009-Ohio-3504, ¶ 6, citing *Rammel v. Rammel*, 2d Dist. Montgomery No. 14362, 1995 WL 21250, *3 (Jan. 20, 1995). So a trial court's failure to explain how it arrived at a particular value "in sufficient detail for us to understand the basis of its decision prevents our determination of the ultimate issue," that is, whether the award of the particular marital property "produced an equitable division of the marital estate." *Id.* A reviewing court is limited to determining whether a trial court abused its discretion in making a property division. *Bohme v. Bohme*, 2d Dist. Montgomery No. 26021, 2015-Ohio-339, ¶ 11.

{¶ 21} In reaching its decision regarding the value of the two motorcycles and the trailer, the trial court stated the following:

*** The Court also will award to [Ricky] the sum of $6,250.00, representing one-half interest in the two motorcycles and the trailer that were – that offers were made for. *** [Karin] I should say, having indicated she has sold the same for a lesser amount to different individuals, and those proposals were made – there were two of them for $12,500.00, *so [Ricky] is entitled to half of that figure.*

{¶ 22} Upon review, the record establishes that the trial court relied upon testimony

regarding two written purchase proposals for the motorcycles and the trailer, each offering $12,500.00, which both Ricky and Karin independently negotiated. Initially, we note that evidence was adduced regarding a written contract between Karin and an individual named William Studer for the purchase of the two motorcycles and the trailer. Moreover, Ricky testified regarding a written contract he entered into with another individual named Ed Baker for the purchase of the same items for the identical price. Both written contracts were identified at the hearing and admitted into evidence.

{¶ 23} We note that Karin testified that she was offered the price of $12,500.00 for the items by Studer through an installment payment plan, but she refused that offer. After refusing that offer from Studer, Karin sold the two motorcycles and the trailer to unidentified individuals for a total of $7,100.00, without first permitting Ricky's potential buyer, Baker, an opportunity to inspect and/or purchase the items for the previously agreed upon price of $12,500.00. After selling the items for the significantly reduced price of $7,100.00, Karin then kept all of the proceeds from the sale without distributing one-half of the money to Ricky, in clear derogation of the terms of the divorce decree.

{¶ 24} In light of the foregoing, we find that the trial court's valuation of the two motorcycles and the trailer at $12,500.00 was supported by competent and credible evidence and that its conclusion was not an abuse of discretion. The trial court's valuation was based upon two written proposals obtained independently from two separate individuals by Karin and Ricky. The instant case is clearly distinguishable from the case cited by Karin, *Banning v. Banning*, 2d Dist. Greene No. 95 CA 79, 1996 WL 354930 (June 28, 1996), in which we were unable to determine whether the property distribution was equitable because the trial court failed to give any basis at all for its

valuations. *Id.* at *2. The fact that Karin unilaterally chose to reject the proposal from Studer and sell the marital property in question for significantly less than what had previously been offered does not affect the trial court's valuation regarding the equitable distribution of the proceeds from the sale of said property. Considering the two written contracts offering the same price admitted into the record, the trial court did not err when it set the value of the two motorcycles and the trailer at $12,500.00.

{¶ 25} Karin's second and final assignment of error is overruled.

{¶ 26} Both of Karin's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

FAIN, J. and FROELICH, J., concur.

Copies mailed to:

David M. McNamee
Matthew J. Barbato
David L. Pendry
Hon. J. Timothy Campbell
(by assignment)