OPINION
This appeal is brought by Richard A. Fisher from the judgment of the Court of Common Pleas, Henry County, terminating his marriage to appellee Cynthia A. Fisher and further disseminating the parties' marital property. Cynthia A. Fisher cross-appeals.
The record presents the following facts. Cynthia and Richard Fisher were married on July 5, 1985. Throughout the marriage Richard, an attorney, was a partner at the law firm of Hanna Fisher[1] in Napoleon, Ohio. The couple has two children, ages 15 and 10. Cynthia worked outside of the home for a short time at the outset of the marriage. After the birth of her first child she ceased most outside employment with the exception of working as a self-employed consultant. Cynthia earned a Masters Degree from Bowling Green State University.
Richard and Cynthia's marriage began to experience hardship after the birth of their second child. At various times between 1993 and 1998 Richard and Cynthia attended marriage counseling, individual counseling and attempted to work things out on their own. Divorce and separation were discussed periodically during this time. Ultimately, the counseling and other efforts failed.
In July 1997, Richard met with Cynthia and her attorney to discuss a possible separation agreement. In August 1997, Richard and Cynthia entered into mediation for the purpose of negotiating issues relevant to terminating their marriage. Pursuant to preliminary mediation agreements, Cynthia and Richard began dividing up investment property in October 1997.
Cynthia filed a complaint for divorce on February 5, 1998 citing gross neglect of duty and extreme cruelty as grounds. Richard filed an answer denying the allegations in Cynthia's complaint. Cynthia moved out of the marital home in March, 1998, one month after she filed the complaint for divorce.
Thereafter, the couple easily came to agreement concerning matters of child custody and shared parenting. Economic matters, however, were not resolved with any such ease. The parties litigated the issue of child support, spousal support, and property valuation extensively over the course of the next two years.
On July 6, 1999 Cynthia was granted leave to file an amended complaint for divorce citing new grounds, that being that the parties had lived apart for over twelve months. All contested matters came to final hearing before the trial court on November 22-24, 1999. Richard acted as co-counsel for himself. On July 26, 2001 the trial court issued final judgment in the matter ending the marriage, adopting the couple's shared parenting plan, and further resolving the seven remaining contested issues, most of which are the subject of this appeal and therefore will be discussed below. It is from this judgment entry that Appellant and Appellee/Cross-Appellant now appeal.
Appellant raises the following assignments of error:
 The trial court abused its discretion by failing to find a de facto termination of the marriage prior to the date of the final hearing, and by failing to value assets and liabilities as of that date
 The child support determinations failed to comply with O.R.C. Chapter 3119, were against weight of the evidence, were an abuse of discretion, and failed to address the issues raised in the shared parenting plan.
 The spousal support awards, both permanent and temporary, failed to conform with O.R.C. 3105.18, were against the weight of the evidence, and were an abuse of discretion, and were contrary to the trial court's stated guidelines
 Valuing the marital residence at 167,500.00 and the law building at 136,000.00 was an abuse of discretion and against the weight of the evidence
 The failure to award defendant all of his separate property and the passive appreciation thereto was against the weight of the evidence and contrary to law.
 Ordering Defendant to transfer to the plaintiff four specific investments, together with accumulated interest and to pay an additional 144,973.56 together with interest was against the weight of the evidence and abuse of discretion, contrary to law and contrary to the trial court's stated intentions.
 Trial court erred in amending the judgment entry dated October 1, 1998 regarding the mediator/arbitrator fees
 Trial court erred by not crediting defendant for the excessive child support payments ordered pendente lite
Appellee/Cross-Appellant advances the following assignment of error:
 The court abused its discretion by failing to provide a hearing as to the necessity and reasonableness of an award of attorney's fees where there was a huge disparity in income and defendant used marital assets to pay defendant's attorney's fees.
 Appellant's First Assignment of Error
In his first assignment of error, Richard argues that the trial court committed an abuse of discretion by failing to find a de facto termination of the marriage prior to the date of the final hearing, and by failing to value assets and liabilities as of that date. We disagree.
Traditionally, a marriage terminates on the date of the final hearing. R.C. 3105.171(A)(2). Eberly v. Eberly (June 13, 2001), Henry App. No. 7-01-04, unreported. However, if the trial court determines that the date of the final hearing would be inequitable and that a de facto termination of the marriage occurred at an earlier time, the trial court has the discretion to select dates that it considers equitable in determining marital property. R.C. 3105.171(A)(2)(b). See also Heary v. Heary (Nov. 30, 2000), Cuyahoga App. Nos. 76833, 77049, 78180, unreported (citingGullia v. Gullia (1994), 93 Ohio App.3d 653, 666).
While the statute allows the trial court to select the date of separation as a de facto date of termination, such action is clearly not mandated. Bowen v. Bowen (1999), 132 Ohio App.3d 616. The determination to use a de facto termination date rather than the date of the final hearing is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. Berish v. Berish
(1982), 69 Ohio St.2d 318.
In denying Appellant's request to designate a de facto date for the termination of his marriage, the court below stated:
 "[T]he evidence before this court reflects that he plaintiff moved from the martial residence on March 28, 1998 after filing her complaint for divorce and participating with counsel and the Court in the initial pretrial conference in this litigation on March 19, 1998.
 In addition the record before the Court is of such a nature that the economic relationship between the parties continued in relation to all the marital assets. Substantial assets of the parties are non-tangible and market sensitive.
 The Court, therefore, overrules defendant's request to reconsider the issue of de facto termination of the parties' marriage and finds in this case, pursuant to Ohio Revised Code 3105.171(A)(2), that the period during the marriage was July 5, 1985 to the date of the final hearing on November 22, 1999"
Appellant claims that the facts of this case clearly support a de facto termination of marriage no later than August 29, 1997; the date that he and Cynthia began mediation and six months before Cynthia filed her complaint for divorce. Richard contends that he and Cynthia's marriage was irretrievably broken down and that they entered mediation in an effort to divide up their marital assets. He admits that he and Cynthia continued to cohabitate for nearly seven months after mediation began but regards this fact as necessitated by the failure to work out child custody arrangements.
The legislature did not create the de facto alternative in order to accommodate the subjective intent of the parties as to the date they believe their marriage to have ended. What's more, courts do not allow parties to use an alternate valuation date based on the date that they first felt like the marriage was over. See Bowen v. Bowen (1999),132 Ohio App.3d 616. The language of R.C. 3105.171(A)(2)(b) unambiguously defines de facto termination as a tool that trial courts have available to satisfy the demands of equity.
Ohio case law establishes that equity demands a de facto termination of marriage when parties have a arrived at a bilateral agreement to divide their financial affairs. This agreement may be evidenced in writing or by actions. Gerrard v. Gerrard (June 16, 1989), Clark App. No. 2493,unreported. A de facto termination of marriage must be clear and bilateral, not unilateral. Day v. Day (1988), 40 Ohio App.3d 155, 158.
The record sub judice is void of evidence that would tend to show that Richard and Cynthia arrived at a bilateral agreement to terminate their marriage in August 1997. By Richard's own admission, the mediation sessions did not result in a final agreement with respect to property division. Furthermore, at a hearing held in December 1998 on the issue of a de facto termination, Richard admitted that he and Cynthia did not sign a separation agreement at any point prior to or during the course of litigation nor had they arrived at a final agreement as to property division. Richard also admitted to opposing the divorce as late as March 1998.
Appellant argues that equity demands that August 1997 be used as the date for a de facto termination of marriage since he invested a great deal of money into his retirement accounts in 1998 and further argues that the trial court abused its discretion by failing to consider evidence to demonstrate that inequity. Continued contribution to a employee retirement fund alone does not create an inequity. When the legislature established the final hearing date as the standard date for property valuation it did so with the knowledge that parties would continue to receive salary, pay into retirement, and accrue interest income during the course of litigation. It is not inequity that life went on as normal for a reasonable period during the course of the divorce litigation. The action began in February 1998 and came to final hearing in November 1999. Any delay in the action can be attributed to the parties themselves and is not such an unreasonable time to litigate a divorce replete with complicated financial disputes.
Ohio courts are reluctant to declare an abuse of discretion with respect to a trial court's refusal to apply a de facto termination of marriage and no court has granted an alternate valuation date prior to the parties actual physical separation. In the few cases that have found an abuse of discretion, the facts indicate that a great deal of time elapsed between the date of separation and the date of the final hearing. See Rogers v. Rogers (Sept. 2, 1997), Franklin App. Nos. 96APF10-1333, 96APF01-67, unreported (numerous continuances, a mistrial and the recusal of two judges created a four year disparity between separation and trial); Gullia v. Gullia (March 16, 1994), Cuyahoga App Nos. 60498, 60335, 61704, unreported (parties filed for divorce three-years after physical separation); Crower v. Crower (Aug. 5, 1999), Franklin App. No. 98AP-1124, unreported (parties filed for divorce seven years after physical separation.)
The trial court did not abuse its discretion when it chose not to utilize an alternate date for property valuation since equity did not demand such action. Accordingly, Appellant's first assignment of error is overruled.
 Appellant's Second Assignment of Error
In his second assignment of error Appellant asserts that the trial court abused its discretion when it awarded the Appellee $2,379.25 per month for child support. An appellate court will not reverse a trial court's child support order absent an abuse of discretion. Rock v.Cabral (1993), 67 Ohio St.3d 108. An abuse of discretion requires a conclusion that the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. Blakemorev. Blakemore (1983), 5 Ohio St.3d 217, 219.
Within this assignment of error, Richard attacks the lower court's child support calculation worksheet on several fronts ranging from the numbers used to the forms used. First, Richard argues that the trial court, when computing his child support obligation, should have averaged his income over the last several years rather than using only his 1998 income. However, Richard does not cite to any authority that would make it mandatory for a court to use an average figure for income. On the other hand, R.C. 3119.05(H) provides that a court, when appropriate, may
average income over a reasonable period of years. Therefore, the trial court had the discretion to use an average of years or one year. Townev. Towne (Nov. 27, 1996), Summit App. No. 17772, unreported; Harter v.Harter (Feb. 26, 1998), Allen App. No. 1-97-55, unreported.
Appellant further argues that the trial court used the wrong form for computing the child support order. We disagree. The record reflects that Richard and Cynthia agreed to a shared parenting plan and the trial court adopted their plan. R.C. 3119.24(A)(1) governs the computation of child support in shared parenting situations and states:
 A court that issues a shared parenting order in accordance with section 3109.04 of the Revised Code shall order an amount of child support to be paid under the child support order that is calculated in accordance with the schedule and with the worksheet set forth in section 3119.022 of the Revised Code, through the line establishing the actual annual obligation, except that, if that amount would be unjust or inappropriate to the children or either parent and would not be in the best interest of the child because of the extraordinary circumstances of the parents or because of any other factors or criteria set forth in section 3119.23 of the Revised Code, the court may deviate from that amount.
Following the mandate of the statute, the trial court utilized the worksheet provided in R.C. 3119.022.
Richard contends that although he and Cynthia's parenting plan istitled "shared parenting agreement", the title alone does not necessarilymake it a shared parenting agreement and that really, in substance, he and Cynthia's agreement is one of split parenting. He goes on to argue that, based on his theory, the trial court should have used R.C. 3119.023
rather than R.C. 3119.022 for child support computation. On the contrary, we find that if it looks like a shared parenting agreement, provides for shared parenting and is called a shared parenting agreement, the trial court does not abuse its discretion by treating the agreement as such.
Next, Appellant argues that the trial court abused its discretion when it applied a 25% set off to his support obligation and argues that he should have been afforded a 50% set off. R.C. 3119.24(A)(1) provides for a deviation from a support obligation in shared parenting situations where the amount as calculated on the statutory worksheet would be unjust or inappropriate to the children or parents and would not be in the best interest of the child because of the extraordinary circumstances of the parents or because of any other factors.
The aforementioned extraordinary measures are defined in R.C. 3119.24(B) as: (1) The amount of time the children spend with each parent; (2) The ability of each parent to maintain adequate housing for the children; (3) Each parent's expenses, including child care expenses, school tuition, medical expenses, dental expenses, and any other expenses the court considers relevant; (4) Any other circumstances the court considers relevant.
The trial court, in its judgment entry, considered Richard and Cynthia's shared parenting agreement which provided that each parent would have the children for an equal amount of time each year. The trial court concluded that this would not cause extraordinary costs because both parents lived in Napoleon, Ohio. Thereafter, the trial court considered the substantial disparity in Cynthia and Richard's income, the future earning capacity of each parent, the standard of living the children would have enjoyed had their parents stayed together, and lack of adequate college funding currently on hand. Based on the aforementioned factors, the trial court concluded that a 25% deviation as to the defendant's support obligation was in order. The trial court's conclusion is supported by the record and is therefore not an abuse of discretion.
Next, Richard argues that the child support worksheet, made a part of the record by the trial court, contains arbitrary numbers not supported by the record. Richard's argument has merit for there are at least two figures on the child support computation worksheet with no basis in the record.
The first number in question is the "basic child support obligation" found on line seventeen of the R.C. 3119.022 worksheet. This figure represents the total amount of support the children require on a yearly basis. The figure is derived from a schedule provided by the legislature in R.C. § 3119.021, which bases the amount of total support on the number of children and the combined income of the parents. The schedule provides for standard child support amounts for incomes up to $150,000.00. For parents whose combined income exceeds this amount, R.C. § 3119.04(B) provides:
 If the combined gross income of both parents is greater than one hundred fifty thousand dollars per year, the court * * * shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents. The court or agency shall compute a basic combined child support obligation that is no less than the obligation that would have been computed under the basic child support schedule and applicable worksheet for a combined gross income of one hundred fifty thousand dollars, unless the court or agency determines that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount. If the court or agency makes such a determination, it shall enter in the journal the figure, determination, and findings. (emphasis added)
For parents with a combined income of $150,000.00, with two children, the schedule provides that the total child support obligation is $21,971.00. Since Richard and Cynthia's income far exceeds the $150,000.00 mark, the trial court had within its discretion the ability to establish an amount, not below the scheduled amount, and in the best interests of the child. Line seventeen of the child support worksheet found in the record contains the figure $42,694.00. However, the record is void of any indication that the trial court itself fashioned this amount nor does the record contain the trial courts' determinations and findings that would support this figure as required by the statute.
Rather, the record reflects that while the trial court specifically ordered the income figures to be used on the child support worksheet, it did not give guidance as to the figure to be used for the total support obligation on line seventeen. In doing so, the trial court violated the requirements of § 3119.04(B) and therefore abused its discretion.
The second suspect number on the child support worksheet can be found on line two and represents a deduction for self-employment tax. The child support worksheet provided in R.C. 3119.022 provides for a deduction from gross income for self-employed individuals in the amount of 5.6% of adjusted gross income or the actual marginal difference between the actual tax rate paid by the self-employed individual and the F.I.C.A. rate.
In the current case, $3,060.00 has been entered on line two of the child support worksheet. However, the record does not support this figure. Richard's 1998 income derived from self-employment was $211,194.20 and 5.6% of that amount equals $11,826.88. Furthermore, Richard's 1998 tax return indicates that he paid $14,137.70 in self-employment tax. Applying the information in the record to the guidelines in R.C. 3119.022 we are unable to ascertain how the $3060.00 figure was achieved and therefore find that figure to be arbitrary and an abuse of discretion.
The final argument Richard raises with respect to the order for child support is that the trial court abused its discretion when it ordered that the parties, not the children, pay the income taxes on the children's investment accounts.
Specifically the trial court wrote on page seventeen of its judgment entry:
 "The defendant, as an attorney at law, shall prepare the appropriate tax returns for the children and any income tax obligations shall be equally divided and paid in equal shares by the plaintiff and the defendant."
Individuals, regardless of age, are responsible for their own income tax obligations. There are situations in which parent and child may share income tax obligations such as when they hold joint accounts. However, the trial court's order as written above is ambiguous and broad.
Accordingly, we overrule Richard's second assignment of error with respect to the use of 1998 income figures, the 25% deviation amount, and the use of the worksheet provided in R.C. 3119.022. However, with respect to the determination of the basic child support obligation, the adjustment for self-employment income, and the ambiguous order concerning the children's income tax obligations, we find Appellant's assignment of error well taken.
 Appellant's Third Assignment of Error
In his third assignment of error Richard argues that the trial court failed to conform with O.R.C. 3105.18 when it ordered him to pay Cynthia $2,000 per month in spousal support until June 2006 contingent upon her death, remarriage, or cohabitation. Specifically, Richard alleges that Cynthia does not qualify for spousal support and that the trial court abused its discretion by failing to discuss each statutory factor listed in R.C. 3105.18(C)(1).
We review the spousal support award under an abuse of discretion standard. Booth v. Booth (1989), 44 Ohio St.3d 142, 144. Spousal support is statutorily defined in R.C. § 3105.18 as "any payment or payments * * * that is both for sustenance and for support of the spouse or former spouse." Spousal support is awarded according to the obligee's need for support and the obligor's ability to pay. Layne v. Layne (1992),83 Ohio App.3d 559, 562-63. It is well settled that a trial court has broad discretion in fashioning an award of spousal support. Lee v. Lee
(Aug. 17, 2001), Shelby App. No. 17-01-05, unreported.
The Ohio Revised Code requires a trial court to consider all the factors listed in R.C. 3105.18(C)(1) when making a determination of whether spousal support is appropriate. Additionally, specific findings must be made by the trial court to enable a reviewing court to determine the reasonableness of its order to grant or deny a request for spousal support and that the relevant factors within R.C. 3105.18 were considered.
This court has previously held on numerous occasions that while the factors of R.C. 3105.18(C)(1) must be considered, "the failure of the trial court to specifically `enumerate' those factors does not constitute reversible error." Lee v. Lee (Aug. 17, 2001), Shelby App. No. 17-01-05,unreported (citing Moore v. Moore (June 18, 1999), Van Wert App. No. 15-98-22, unreported). As long as the record reflects that the trial court considered the factors in 3105.18(C)(1), the award for spousal support will be upheld.
Richard does not support his arguments with case law but rather submits numerous contentions that the trial court came to the wrong conclusions when applying the law. Disagreeing with the trial court's conclusions, without a showing of the unreasonableness, arbitrariness, or unconscionability of the trial court's actions, is insufficient to demonstrate an abuse of discretion.
The record reflects that the trial court considered the factors in R.C. 3105.18(C)(1). The trial court discussed its findings and its rationale over the course of three pages in the judgment entry. The record does not indicate that the trial court acted unreasonably, arbitrarily, or unconscionably or in a manner that would demonstrate something more than a mere error of law or judgment. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
Richard further argues that the trial court erred when it increased, by $750.00, the order for temporary spousal support to be imposed retroactively. Again, the record reflects that the trial court considered the relevant statutory requirements and the order does not amount to an abuse of discretion. Accordingly, Richard's third assignment of error is overruled.
 Appellant's Fourth Assignment of Error
In his fourth assignment of error Richard argues that the trial court abused its discretion when it valued the parties' marital residence at $167,500.00 and his law building at $136,000.00.
According to the record, each party submitted evidence on the issue of property valuation for the marital home on Kenilworth Avenue and the Hanna and Fisher law building. Richard's witness valued the residence at $135,000.00 and the law building at $136,000.00. Cynthia's witness valued the residence at $167,500.00 and the law building at $117,500.00. With respect to the marital home the trial court reconciled the disparity as follows:
 "The court finds based on the evidence provided at trial herein that the [marital residence] has a value of $167,500.00 at the time of the final hearing within. The Court finds the plaintiff's expert evaluation * * * to be more credible and included the use of comparables."
 With respect to the law building the trial court noted that each party, during the course of the litigation, presented different valuations for the law building. Ultimately, the court chose to use the figure presented by Richard's witness; $136,000.00. Richard's argument is that the trial court abused its discretion by using Cynthia's figure for the marital residence and his figure for the law building.
It is clear that the trial court is in the best position to determine the credibility of the witnesses and the weight to be given their testimony. State v. Thomas (1982), 70 Ohio St.2d 79. The trial court is free to accept one portion of a witnesses testimony while rejecting others. Richard's argument that the trial court was bound to use both figures as submitted by Cynthia's attorney has no basis in law. Evidence in the record supports both property valuations as determined by the trial court. Accordingly, there is no abuse of discretion and Richard's fourth assignment of error is overruled.
 Appellant's Fifth Assignment of Error
In his fifth assignment of error the appellant asserts that the trial court failed to award him all of his separate property and the passive appreciation thereto and therefore abused its discretion. Richard points to three separate instances where the trial court failed to award him a separate property interest including, (1) a one-fourth interest in the tangible and intangible personal property held by his law firm; (2) an interest in a Vanguard Index Trust 500 IRA and Vanguard Winsor II IRA as well as the passive appreciation of those funds; (3) an interest in the marital residence as well as the passive appreciation of that interest.
In divorce proceedings, a trial court is charged with the duty to determine what constitutes marital property and what constitutes separate property and must do so in accordance with the respective definitions set forth in R.C. 3105.171(A). Once the trial court determines which property is separate and which is marital, it then must divide the marital and separate property equitably between the spouses. R.C. 3105.171(B).
Marital property includes personal property that currently is owned by either or both of the spouses and that was acquired by either or both of the spouses during the marriage. R.C. 3105.171(A)(3)(a)(i). Separate property includes property acquired by one spouse prior to the date of the marriage, as well as passive income and appreciation acquired from separate property by one spouse during the marriage; R.C.3105.171(A)(6)(a)(ii) and R.C. 3105.171(A)(3)(a)(iii). Unless it is part of a distributive award to supplement the division of marital property, a spouse's separate property must be awarded to that spouse. R.C. 3105.171(D),Barkley v. Barkley (1997), 119 Ohio App.3d 155.
The commingling of separate property with other property does not destroy the identity of the separate property as separate property, except if the separate property is not traceable. R.C. 3105.171(A)(6)(b). Thus, traceability is key in determining whether separate property has lost its separate character after being commingled with marital property. Peck v. Peck (1994), 96 Ohio App.3d 731, 734.
Moreover, the party seeking to have property declared separate has the burden of proof by a preponderance of the evidence. Kerchenfaut v.Kerchenfaut (Sept. 5, 2001), Allen App. No. 1-01-14, unreported. See also; Kelly v. Kelly (1996), 111 Ohio App.3d 641, 642; McCoy v. McCoy
(1995), 105 Ohio App.3d 651; Okos v. Okos (2000), 137 Ohio App.3d 563;Peck v. Peck (1994), 96 Ohio App.3d 731, 734. A determination by the trier of fact that certain property is not separate will not be overturned unless it is against the manifest weight of the evidence.Barkley v. Barkley (1997), 119 Ohio App.3d 155, 159.
First, Richard argues that the trial court should have awarded him a one-fourth separate interest in the tangible and intangible personal property of his law practice amounting to $27,593.50.00 since he owned that much of the firm prior to his marriage. The record reflects that in 1982, prior to his marriage, Richard paid a retiring partner $43,600.00 for a one fourth interest in the law building and $1,403.18 for the law firm's equipment, furnishings, and supplies, thereby obtaining partnership status and a one-fourth interest in the law firm now known as Hanna and Fisher. Notably, neither of these payments were labeled as a payment for the law practice itself.
Later, on two separate occasions during his marriage, Richard used marital funds to purchase a larger interest in the law firm; in 1986 he paid Martin E. Hoeffel $11,666.66 for a portion of the partnership and in 1991 he paid $19,362.00 to Harry James Funkhouser for another portion of the partnership. It is not clear from the record whether these payments were apportioned between the law building, law practice or intangible personal property belonging to the law firm. To date, Richard owns a one-half interest in the firm and the law building.
At the hearing below, Richard presented testimony and documentary evidence establishing the value of the law building at $136,000.00. Therefore, the trial court awarded him as separate property one-fourth of that value, $34,000.00. With respect to the non-building assets of the law practice the trial court ruled accordingly:
 The defendant further claims as separate property the non-building assets of his current law firm as to office equipment, furnishings, accounts receivables, work in progress and any other law firm associated assets. The only evidence before the Court on this issue is that the defendant Richard Fisher, in the early 1980's (prior to his marriage to the plaintiff), paid $1,403.18 for a one fourth interest in the tangible personal property assets of the law firm. Accordingly, the defendant's separate property interest in the non-building assets of the law firm is found to be $1,403.18.
Richard claims this ruling was in error and that he should have been awarded a one-fourth interest in the non-building assets of the law practice. And yet, the only evidence Richard presented concerning the non-building assets of the law practice is that in 1982 he paid $1403.18 for the tangible property assets of the law firm.
Richard neglected to establish the value of law firm's non-building assets on the day he obtained his one-fourth interest. He did not establish the value of the non-building assets of the law practice as of the date of his marriage. What's more, Richard failed to present evidence establishing the current value of the non-building assets of the law firm. Each of these figures would have been necessary to trace the original value of the assets, the passive appreciation of those assets and the non-passive appreciation.
R.C. 3105.171(A)(3)(a)(iii) unambiguously mandates that when either spouse makes a labor, money, or in-kind contribution that causes an increase in the value of separate property, that increase is not then passive and therefore is deemed marital. Middendorf v. Middendorf (1998),82 Ohio St.3d 397,400. Consequently, any increase in the value of the non-building assets of the law firm directly attributable to Richard's efforts during the marriage would be marital property.
Rather than presenting evidence for the value of the non-building assets of the law firm, Richard contends that he is entitled to one fourth of the value as estimated by Cynthia's witness, Mr. Mahler, who testified that the non-building assets of Hanna and Fisher were worth $110,374.00. We find it less than helpful to Richard's argument that in the "Defendant's Final Argument, Finding of Fact and Conclusions of Law" filed with the trial court on February 14, 2000 he characterized Mr. Mahler's testimony as speculative, inaccurate, and even went so far as to say that Mr. Mahler could not be sure that the law firm was worth anything more today than it was when Richard obtained an interest in it in 1982.
The trial court found, and we concur, that Richard clearly owned a one fourth interest in the law firm on the day he was married. However, Richard had the burden of proof by a preponderance of the evidence to establish a value for that separate property interest. We know that in 1982 he paid $43,000.00 for a one-fourth interest in the law building.[2]
However, as pointed out by the trial court, the only other evidence presented was that in the early 1980's he paid $1,403.18 for tangible office equipment and furnishings. Without further information, the trial court made the best decision it could with the evidence before it, by awarding Richard $1,403.18 as separate property and the remaining value of the law firm as presented by Mr. Mahler as marital property. We find that conclusion to be supported by the manifest weight of the evidence.
Next, Richard argues that the trial court failed to award him as his separate property interest at least one half of the value of a Vanguard Index Trust 500 IRA and a Vanguard Windsor II IRA as well as the passive appreciation of those funds. According to Richard, the two accounts in question were funded by IRA certificates of deposits owned by Richard prior to the marriage. Richard supports this contention with a letter from the Henry County Bank listing his account activity for an IRA labeled #83449. The list shows least three deposits made into the IRA prior to the marriage and then two made after the marriage. The account was closed in April 1992 with the withdrawal of $7478.02.
Richard's specific argument is that one of the Henry County Bank deposits made before the marriage and another deposit made after the marriage were combined together and rolled over to into two separate IRA's on March 15, 1996. Richard attempts to trace the money from the Henry County Bank, through a Fidelity IRA, to the Vanguard IRA. And yet, the record does not contain documentation that follows the money through the Fidelity account. For instance, there is no evidence indicating when the Fidelity IRA account was opened, the opening balance, or the date it was closed. For purposes of tracing the funds, Richard himself relies on a balance sheet written in his own hand, which he titled "Fidelity Balanced Fund (RAF-IRA) Closed-1996 (Transferred to IRA w/Vanguard Index 500 Windsor II)." The trial court did not find this to be sufficient evidence of traceability; a finding we find to be supported by the manifest weight of the evidence.
Finally, Richard argues that the trial court failed to award him his separate property interest in the marital residence as well as the passive appreciation value thereto. First, Richard claims that shortly after his marriage funds from a pre-martial Home Savings and Loan Association Money Market were used to pay off the mortgage on the marital residence.
The record shows that Richard held $15,221.23 in a Home Saving and Loan Association Money Market account prior to his marriage. The account was closed on July 12, 1985 and on that same day rolled over into another Home Savings account in Richard and Cynthia's name. By January 10, 1986 the balance of the account was $20,726.90. The record further shows that in June and July 1986 Richard and Cynthia made payments of approximately $50,000.00 to their mortgage company in order to pay off the mortgage on the marital residence.
Richard claims that funds from the Home Saving and Loan Association Money Market account were "probably used" to pay off the mortgage balance on the marital residence but was unable to show as much with bank records or personal financial records. Consequently, the record does not establish by a preponderance of the evidence that Richard's separate property was used to pay off the mortgage on the marital residence.
Richard further argues that the court failed to award him as separate property the passive appreciation value of the marital residence. Appreciation, based solely upon the increase in the fair market value of separate property based upon its location, or inflation, remains separate property. Munroe v. Munroe (1997), 119 Ohio App.3d 530. Here, the record shows that Richard purchased the home on Kenilworth Avenue in 1979, six years before his marriage to Cynthia, for $76,900.00. On the date of the marriage the property carried a mortgage of $54,632.78. Based on this, the trial court awarded Richard, as his separate property interest in the house, $22,268.00. However, Richard claims that the court should have considered the property value on the date of the marriage in 1985 and not the 1979 purchase price. However, the only evidence in the record as to the value of the house in 1985 is Richard's own testimony that, in his opinion, the house was worth $95,000.00 on the day he was married. For whatever reason, the trial court chose to disregard this testimony; most likely due to its self-serving nature or lack of independent corroboration.
Clearly, Richard had the burden to establish by a preponderance of the evidence what portion of the home was his separate property. Id at 536. Richard did not establish the value of his home on the date of his marriage by a preponderance of the evidence and therefore did not establish his separate interest in the passive appreciation in the residence. Richard had an expert witness testify as to the current value of the Kenilworth property. It would have been just as reasonable for the expert to provide an opinion as to the value of the home on the date of the marriage. Without such evidence, the trial court had only the purchase price with which to make its determination. For these reasons, this court concludes, as did the trial court, that there was not enough information or evidence presented at the hearing to evaluate this matter.
Furthermore, Richard did not provide evidence that the appreciation in the marital home was solely attributable to market conditions and not improvements he and Cynthia made during their marriage. The record reflects that the couple invested $54,900.00 into home improvements. While Richard speculates that the marital home's increased value was clearly attributed to inflation or other market conditions by a showing of mathematical calculations in his brief, his calculations do not account for passive appreciation earned as a result of the improvements. This court is unwilling, as was the trial court, to make such a speculative assumption. Appellant has failed to show an abuse of discretion by the trial court in this regard. Accordingly, Appellant's fifth assignment of error is overruled.
 Appellant's Sixth Assignment of Error
In his sixth assignment of error the appellant alleges that the trial court acted against the weight of the evidence and abused its discretion when it ordered him to transfer, to the plaintiff, four specific investments including accumulated interest and to pay an additional $144,973.56 with interest. A trial court has broad discretion in determining an equitable property distribution. James v. James (1995),101 Ohio App.3d 668 . As long as the distribution ordered by the court is not unreasonable, arbitrary, or unconscionable, the court acts within its discretion in fashioning an award. Id.
The specific distribution giving rise to this assignment of error occurred after the trial court made an initial distribution of the couple's marital assets and debts and then noticed a substantial disparity in the results. Acting to remedy the disparity the trial court stated:
 The difference in net value of the assets and debts as allocated above is $508,857.29. In order to equalize the division of net value of these assets the plaintiff shall receive and the defendant shall transfer by any necessary method $254,428.64 and the following assets:
 (1) Defendant's IRA account number 8344905 $3,905.53
 (2) Vanguard IRA (Fund 40) $11,494.72
 (3) Vanguard Windsor II (Fund 73) $8,737.63
 (4) Vanguard prime money market (Fund 30) $85,317.20
 Total Value $109,455.08
Richard's first argument with respect to this distribution is that the trial court did not accomplish its stated goal to equally distribute the marital funds since the first three accounts listed above are tax deferred individual retirement accounts. He posits that the true value of those accounts is not represented by face value since that figure does not take into account future tax consequences. Therefore, he argues, by receiving a greater portion of the tax deferred accounts he has incurred a higher tax liability and the court has failed to equally distribute the property.
Implicit in Richard's argument is the premise that trial court has a legal obligation to split tax deferred marital assets equally. And yet, Richard offers no law in support of his contention. Rather, he insists that the inequity of the distribution alone is plain and therefore reversible error.
For purpose of distributing marital retirement accounts, the Supreme Court of Ohio has stated that "[i]n order to reach an equitable result, the court should attempt to preserve the pension or retirement asset in order that each party can procure the most benefit, while disentangling the parties' economic partnership so as to create a conclusion and finality to their marriage." Layne v. Layne (1992), 83 Ohio App.3d 559,564 (citing Hoyt v. Hoyt (1990), 53 Ohio St.3d 177.
Tax consequences of property division may be proper considerations for the court, so long as those consequences are not speculative. Day v. Day
(1988), 40 Ohio App.3d 155, 159, 532 N.E.2d 201, 205-206; R.C.3105.171(F)(6). When the tax consequences are found to be speculative, a court need not consider them. Fergus v. Fergus (1997), 117 Ohio App.3d 432. The tax implications of an individual retirement account cannot be assessed prior to liquidation and therefore any attempts by the trial court to take into account those implications would have been speculative. Consequently, the trial court's failure to assess future tax implications was not error.
Next, Richard argues that the trial court's award to Cynthia of interest on the four accounts and the $144,973.56 was contrary to its express intentions to equally divide the marital assets, constituted an illegal award of prejudgment interest and further constituted a failure to consider the income tax consequences to defendant of such an award. Furthermore, Richard argues that the trial court should have required Cynthia to pay the income taxes associated with the interest earned on the Vanguard prime money market account.
Richard contends that the trial court's award to Cynthia of the interest accrued on the four accounts listed above and the interest on the remaining $144,973.56 constituted an award of pre-judgment interest and as such violated the provisions of R.C. § 1343.03(C) which provides:
 Interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case.
"R.C. 1343.03(C)[3] was enacted to promote good faith efforts to settle cases, to discourage tortfeasors from frivolously delaying the ultimate resolution of their cases, and to compensate plaintiffs for defendants' use of money which rightfully belonged to the plaintiffs."Musisca v. Massillon Community Hosp. (1994), 69 Ohio St.3d 673, 676.
We do no find that R.C. § 1343.03(C) is applicable in the current matter. In the first place, the Ohio Supreme Court in Koegel v. Koegel
(1982), 69 Ohio St.2d 355, 358 declined to resolve whether R.C. §1343.03 was even applicable to cases involving the division of marital property. What the Koegel court did say however was that R.C. §1343.03 only applies to obligations due and payable.
In the current matter, the trial court did not order Richard to pay interest on an obligation due and payable or even on an obligation not yet due and payable so therefore R.C. § 1343.03 does not apply. The trial court divided property and some of that property happened to be accumulated interest. In other words, the trial court did not award interest on a division of property, it awarded interest accrued on investment property from the date of the final hearing to present as adivision of property. There is a distinct difference between what R.C. § 1343.03(C) purports to limit and the inherent obligation of a court to divide all marital property as held by the parties.
This court in Boes v. Boes (June 17, 1998), Seneca App. No. 13-98-10,unreported held that a trial court abused its discretion when it awarded Appellee pre-judgment interest on division of property and attorney fees prior to the entry of judgment, retroactive to the date of the Magistrate's Decision, and during the pendency of Temporary Orders in the case. Id.
In Boes, the trial court sua sponte awarded the appellee "legal interest at the rate of 10% per annum" from the date of the Magistrate's Decision to the date of the Final Judgment on two lump sum awards and attorney's fees. We applied R.C. § 1343.03(C) and held that the order amounted to an unwarranted prejudgment interest.
The facts of Boes are distinguishable from the matter currently before this court. In Boes, the trial court ordered interest to be paid on an amount it deemed owing; the two lump sums and the attorney's fee. In the current matter, the trial court did not order interest paid on an amount due, but rather distributed marital property that happened to be in the form of accumulated interest.
The trial court fashioned its order as follows:
 [Richard] shall pay to [Cynthia] any interest on these four accounts that have accumulated since the date of November 22, 1999 (date of final hearing). Any deposits made to these accounts since November 22, 1999 shall be the property of the [Richard], free and clear of any claim on the part of [Cynthia]. Any withdrawals from these accounts since November 22, 1999 shall be redeposited in the account.
The trial court's order clearly indicates the intent to distribute property as of November 22, 1999 and does not indicate an intent to order Richard to pay interest on an obligation. The same is true with respect to the award for $144,973.56. It is important to keep in mind that the trial court awarded the four accounts and the $144,973.56 in order to accommodate a vast disparity in its initial distribution of marital property. In essence, the trial court's order establishes that the four accounts and the $144,973.56 belonged to Cynthia as of November 22, 1999 and therefore, any interest accrued on those funds since that date should be hers as well.
Richard's final argument with respect to the distribution of marital property is that the award to Cynthia of Richard's Vanguard Prime Money Market account totaling $85,317.20 (the fourth account on the list) was erroneous. First, Richard claims that the court used the wrong figure as the balance for this account. However, the record reveals via Plaintiff's Exhibit 50 calculations made by the trial court that take into account one month's worth (date of statement to date of hearing) of accrued interest. Furthermore, the record indicates that the trial court used the figure established in the plaintiff's proposed findings of fact. The record does not indicate that Richard objected to this figure. Moreover, the difference of $599.48 would be slight error for a trial court attempting to distribute over one million dollars in assets and can hardly be found to be so significant as to tip the scales of equity much less arbitrary, unconscionable, or unreasonable.
Richard's next claim of error as to the distribution of the Vanguard Prime Money Market account is that the account and funds therein were already divided on June 30, 1998. While the record reflects that on June 30, 1998 Richard did in fact write Cynthia a check for $100,000 from the Vanguard Prime Money Market account in an attempt to divide up the couple's assets, this fact is irrelevant since the money remaining in the account is still marital property subject to disbursement by the court. Furthermore, the record reflects that the trial court took into account the prior property distribution. For instance, Cynthia's current home on Dodd Street, purchased using the funds from the June 30, 1998 check for 100,000.00, was assessed as marital property and included in the trial court's property distribution.
The trial court did not abuse its discretion in its distribution of marital property. Accordingly, Appellant's sixth assignment of error is overruled.
 Appellant's Seventh Assignment of Error
In his seventh assignment of error Appellant contends that the trial court erred in amending the judgment entry dated October 1, 1998 regarding the mediator/arbitrator fees. The thrust of Richard's argument is that the trial court, in its October 1, 1998 Judgment Entry, ordered the party to pay one-half of the "reasonable" mediator fees but later left out the word "reasonable" in its Final Judgment Entry dated July 26, 2001. We find this argument to be totally without merit as Richard fails to establish in what way, if any, such a modification has prejudiced him.
 Appellant's Eighth Assignment of Error
In his eighth assignment of error Appellant asserts that the trial court erred by not crediting him for the excessive child support payments ordered pendente lite. Essentially, in this assignment of error, Richard revisits the previously discarded proposition that the court used the incorrect child support computation worksheet. Using his figures, Richard arrives to the conclusion that he has overpaid child support and therefore is entitled to a credit.
We do not find, based on Richard's argument, an overpayment of child support. However, since we have already pointed to errors in the computation of child support and will remand this action accordingly, we cannot assess such a figure. The trial court, after taking action pursuant to this opinion, will be in a better position to determine whether Richard has over paid his support obligation.
Accordingly, Appellant's eighth assignment of error is overruled.
 Appellee/Cross-Appellant's First Assignment of Error
In her sole assignment of error, Cynthia alleges that the trial court abused its discretion by failing to provide a hearing as to the necessity and reasonableness of an award of attorney's fees where there was a huge disparity in income and defendant used marital assets to pay defendant's attorney's fees.
The decision to award or not to award attorney's fees is within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. Birath v. Birath (1988), 53 Ohio App.3d 31, 39,558 N.E.2d 63; Willis v. Willis (1984), 19 Ohio App.3d 45; Bucher v.Bucher (June 24, 1998), Crawford App. No. 3-98-2, unreported. See alsoDemo v. Demo (1995), 101 Ohio App.3d 383, 388-389.
Attorney's fees in divorce actions are governed by R.C. 3105.18(H), which provides:
 In divorce or legal separation proceedings, the court may award reasonable attorney's fees to either party at any stage of the proceedings, including, but not limited to, any appeal, any proceeding arising from a motion to modify a prior order or decree, and any proceeding to enforce a prior order or decree, if it determines that the other party has the ability to pay the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall determine whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney's fees.
A trial court does not abuse its discretion when it denies attorney's fees upon a finding that both parties were able to pursue and fully litigate their rights adequately. Collins v. Collins (May 8, 1997), Shelby App. No. 17-97-1, unreported. In the case sub judice, the trial court indicated that based on Cynthia's awards for marital property and spousal support, she had not been prevented from fully litigating her rights or adequately protecting her interests. The record fully supports this finding.
Cynthia argues that trial court should have held a hearing on this matter as it originally stated it would do. However, the trial court had, within its discretion, the option to forgo a hearing on the issue of attorney's fees. Patterson v. Patterson (Dec. 14, 1998), Adams App. No. 97CA654, unreported. The record supports the trial courts decision. Accordingly, Appellee/Cross-Appellant's sole assignment of error is overruled.
In conclusion, we overrule Appellant's first, third, fourth, fifth, sixth, seventh and eighth assignments of error and further overrule Appellee/Cross-Appellant's sole assignment of error. We find Appellant's second assignment of error to be well taken with respect to the determination of the basic child support obligation, the adjustment for self-employment income, and the ambiguous order for the parties to pay the children's income taxes.
For the reasons stated it is the order of this Court that the judgment of the Court of Common Pleas, Henry County is hereby affirmed in part and reversed in part and the cause is remanded for further action in accordance with this opinion.
Judgment Affirmed in Part and Reversed in Part.
HADLEY and WALTERS, J.J., concur.
[1] Prior to January 1, 1999 the firm was known as Hoeffel, Funkhouser, Hanna Fisher.
[2] The fact that Richard paid $43,000.00 twenty years ago for interest in a building now worth $36,000.00, implies that a portion of the $43,000.00 might have been attributable to the practice itself and not the building. However, the record is void of any such clarification
[3] We note that this statute, along with several other tort provisions, has been the subject of a series of acts and counter-acts by both the legislature and the Ohio Supreme Court. In 1996, the Ohio Legislature adopted Am.Sub.H.B. 350 also known as "Tort Reform" and undertook, inter alia, to amend R.C. 1343.03. In 1999, the Ohio Supreme Court repealed Am.Sub.H.B. 350 in toto, finding it to be unconstitutional and prohibiting courts from enforcing it. State ex rel. Ohio Academy ofTrial Lawyers v. Sheward (1999), 86 Ohio St.3d 451, 715 N.E.2d 1062, paragraphs two and three of the syllabus. Therefore, the version of R.C.1343.03 in effect prior to the adoption of H.B. 350 remains in effect.Urban v. Goodyear Tire Rubber Co. (Dec. 7, 2000), Cuyahoga Nos. 77162, 77776, 76703, unreported.